(93 South. 7)

## CROSLAND, Probate Judge, v. FEDERAL LAND BANK OF NEW ORLEANS.
### (3 Div. 552.)

(Supreme Court of Alabama. Feb. 25, 1922. Rehearing Denied May 11, 1922.)

**1. Taxation ⬤☞105½—Privilege or license tax for recording instruments held not ad valorem or direct tax.**

Notwithstanding the amount of the "privilege or license tax" provided by Revenue Act 1919, § 361, schedule 71, is based or graduated on the consideration of the instruments to be recorded, it is in no sense an ad valorem or direct tax, and is not compulsory, but entirely optional with the holder, to be paid if he seeks the benefit or protection of the registration laws, and is merely a privilege tax.

**2. Taxation ⬤☞4—Federal Farm Loan Act, exempting from taxation, held not to exempt from privilege or license tax for recording mortgages.**

Federal Farm Loan Act, § 26 (U. S. Comp. St. § 9835q), declaring certain mortgages exempt from federal, state, municipal, and local taxation, refers to a property or ad valorem tax, and not to the "privilege or license tax" provided by Revenue Act 1919, § 361, schedule 71, requiring payment of a fee for recording mortgages, in view of Revenue Act 1919, § 2.

**3. Taxation ⬤☞105½—State statute, requiring collection of "privilege or license tax" on registration of mortgage, held not to conflict with Federal Farm Loan Act as to payment of tax by borrower.**

Acts 1919, § 361, schedule 71, requiring the probate judge to collect a privilege or license tax before recording a mortgage, does not determine who shall pay the same, and therefore does not conflict with Federal Farm Loan Act, § 13, subd. 9 (U. S. Comp. St. § 9835g), even though the latter requires the borrower to pay.

McClellan and Miller, JJ., dissenting.

Appeal from Circuit Court, Montgomery County; Walter B. Jones, Judge.

Mandamus by the Federal Land Bank of New Orleans to require D. W. Crosland, as Judge of Probate, Montgomery County, to record a certain mortgage without the payment of the usual privilege or license tax therefor. From a decree granting the writ, respondent appeals. Reversed and rendered.

The Federal Land Bank of New Orleans offered on March 23, 1920, to the judge of probate of Montgomery county, to be recorded, a mortgage executed to it by J. M. Ashley and wife on real estate in that coun-

ty, to secure a loan of $3,000 cash, made on November 15, 1919. The recording fee of $3.25 was also tendered with the mortgage. The probate judge refused to receive and file the mortgage and to take the $3.25 recording fee, because the Federal Land Bank would not pay him the "privilege or license tax" of 15 cents on each $100 of the $3,000 indebtedness secured by the mortgage, which amounted to $4.50, as provided by schedule 71 of section 361 of the Revenue Act of 1919. The Federal Land Bank then filed its application for a writ of mandamus in the circuit court of Montgomery county to compel the judge of probate to receive, file, and record the mortgage without the payment of the $4.50 tax. The writ of mandamus was awarded on the hearing by the court. The defendant appeals, and this judgment is assigned as error.

A. A. Evans, of Montgomery, Harwell G. Davis, Atty. Gen., and James J. Mayfield, Asst. Atty. Gen., for appellant.

The tax required by schedule 71, § 361, Acts 1919, is a license tax or privilege tax, and not a property or franchise tax. 188 Ala. 487, 66 South. 169, L. R. A. 1915A, 185, Ann. Cas. 1916E, 752; 145 Ala. 313, 41 South. 947; 141 Ala. 111, 37 South. 662. The state, therefore, had a right to collect the tax and the federal Congress cannot prevent that right. Judson on Taxation, § 281 et seq.; 177 U. S. 28, 20 Sup. Ct. 518, 44 L. Ed. 657; 114 Va. 444, 76 S. E. 954; 113 Va. 108, 73 S. E. 446; 96 Kan. 50, 149 Pac. 977, L. R. A. 1916A, 846; 96 Ala. 144, 11 South. 393, 16 L. R. A. 729; 100 U. S. 491, 25 L. Ed. 558; 104 Minn. 179, 116 N. W. 572; 18 Op. Attys. Gen. 491; 34 Ark. 166.

W. C. Dufour and John St. Paul, Jr., both of New Orleans, La., and W. A. Gunter and Ludlow Elmore, both of Montgomery (Tyler Goodwin, of Montgomery, amicus curiæ) for appellee.

The Federal Land Bank Act, in section 26, expressly exempts from taxation of any sort, except as therein stated. The tax here sought to be imposed is an ad valorem tax, or a revenue measure. 145 Ala. 314, 41 South. 947; 182 Ala. 505, 62 South. 534; sections 45 and 70, Const. 1901; 104 Minn. 179, 116 N. W. 572; 188 Ala. 508, 66 South. 169, L. R. A. 1915A, 185, Ann. Cas. 1916E, 752. The Federal Land Bank is a branch or arm of the federal government, and hence not subject to taxation. 31 Kan. 151, 1 Pac. 288, 47 Am. Rep. 486; 4 Wheat. 415, 4 L. Ed. 579; 62 Ala. 284, 34 Am. Rep. 15; 37 Cyc. 830; 173 U. S. 664, 19 Sup. Ct. 537, 43 L. Ed. 850; (C. C.) 92 Fed. 273; 255 U. S. 211, 41 Sup. Ct. 243, 65 L. Ed. 577; 12 Wheat. 419, 6 L. Ed. 678; 250 U. S. 199, 39 Sup. Ct. 445, 63 L. Ed. 936; 122 U. S. 326, 7 Sup. Ct. 1118, 30 L. Ed. 1200; 157 U. S. 429, 15 Sup. Ct.

---

⬤☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

673, 39 L. Ed. 759; 24 How. 52, 16 L. Ed. 604; 226 U. S. 418, 33 Sup. Ct. 116, 57 L. Ed. 275; 250 U. S. 199, 39 Sup. Ct. 445, 63 L. Ed. 936.

ANDERSON, C. J. [1, 2] The tax fixed by schedule 71 of section 361 of the Revenue Act of 1919 (Acts 1919, p. 420) is mentioned as a "privilege or license tax," and is required as a condition precedent to the recording, in the proper office of this state, of the instruments therein mentioned. Notwithstanding the amount of said tax is based or graduated upon the consideration of said instruments, it is in no sense an ad valorem or direct tax. Its payment is not compulsory, but is entirely optional with the holder, if he seeks to get the benefit or protection of our registration laws by using the public records. It was held to be a privilege, and not an ad valorem, tax in the case of Barnes v. Moragne, 145 Ala. 313, 41 South. 947, and was so designated and treated in the case of State v. Alabama Fuel Co., 188 Ala. 487, 66 South. 169, L. R. A. 1915A, 185, Ann. Cas. 1916E, 752. It is true that this last case explains and qualifies an expression in the opinion in the case of Barnes v. Moragne, supra, but not on this point, as these two cases are in thorough accord as to the kind of tax we are now dealing with.

Our tax law puts this tax on all instruments therein mentioned offered for record, and provides no exemption; so, if this appellee can get the benefit of recording the mortgage in question, it must rely upon an exemption under the federal, and not the state, law. It is true the Federal Farm Loan Act (39 U. S. Stat. § 26, p. 380 [U. S. Comp. St. § 9835q]) declares the mortgage in question to be an instrumentality of the government, and that the same shall be exempt from federal, state, municipal, and local taxation; but we think that the exemption refers to a property or ad valorem tax, and not to the tax in question. In other words, we cannot conceive of an intent on the part of the Congress to authorize this appellee to use the records of the respective states for the registration of its security and escape the payment of the record or privilege tax exacted of all others. This holding finds support in the cases of Pocahontas v. Commonwealth, 113 Va. 108, 73 S. E. 446, and in an opinion by Attorney General Garland, 18 Opinions of Atty. Gen. pp. 491, 492. Attorney General Garland said:

"The tax is upon the registration of deeds, a means provided by the state for the prevention of fraud in transactions affecting the title to real property; it is not a tax upon either the instrumentalities, agencies, or property of the general government, strictly speaking. The case here does not differ essentially from one where a tax is imposed by the state on the process of its courts and an action in one of these courts is brought by the United States. In such case, doubtless, the United States, unless exempted by the state law, would be liable to pay the tax on process sued out thereby the same as any other suitor would be under like circumstances. The United States may or may not put its deed on record in the county clerk's office, as it may or may not bring its suit in the state court; but, where it does either, it would seem to be, equally with private parties, bound to pay the fees and charges therefor imposed by the laws of the state."

True, the attorney general was dealing with a deed; but it was just as much an instrumentality of the federal government as the mortgage in question. Moreover, the Virginia statute that he was dealing with imposed a record tax in addition to the registration fees on mortgages and deeds of trust, as well as deeds. Acts Va. 1883–84, p. 561; Va. Code 1887, § 579.

We repeat that the payment of the tax in question is purely voluntary on the part of this appellee, as its mortgage cannot be taxed unless it desires to place it upon the records of the state. While section 2 of the Revenue Act of 1919 (page 283), in providing exemption from an ad valorem tax, is a little involved, as it exempts mortgages which have been filed for record and does not specifically mention unrecorded mortgages, yet the last part of the sentence exempts "all solvent credits," and counsel for the state concede in their brief that all mortgages, whether recorded or not, are exempt from an ad valorem tax under our statute. This, however, is unimportant in the present case, for, if the mortgage in question is not exempt under our statute from an ad valorem tax, it is under the federal act; so, as above stated, the payment of this tax is optional with the appellee. If it does not desire to record its mortgage, the same is not liable to a tax; but, if it wishes the benefit and protection of our registration laws, it must, like all others, pay for the privilege.

The trial court erred in awarding the mandamus; that judgment is reversed, and one is here rendered, dismissing the petition for mandamus.

Reversed and rendered.

SAYRE, SOMERVILLE, GARDNER, and THOMAS, JJ., concur.

McCLELLAN and MILLER, JJ., dissent.

## On Rehearing.

ANDERSON, C. J. [3] It is insisted that there is a conflict between the Alabama statute and the Federal Farm Loan Act, in that the former requires this mortgage tax to be paid by the lender, whereas the latter provides that such a charge can only be paid by the borrower. (A point not made upon the previous consideration of this cause.) Whether or not such a conflict could have any material bearing upon the question in hand we need not decide, for the reason

that we see no such conflict. True, subdivision (a) of schedule 71 of the Act of 1919 (Acts 1919, p. 420) levies this tax against the lender, and requires a certificate that the same has been paid by the lender before the instrument can be recorded; but the certificate in question is required only by the probate judge or his clerk. Subdivision (d), schedule 71. This simply means that the probate judge must collect the tax and so certify before recording the instrument, but our statute does not preclude the lender from contracting with the borrower as to who shall pay the same, and there is therefore no conflict between the state law and paragraph 9 of section 13 of the federal act (U. S. Comp. St. § 9835g), even if said last act requires this charge to be paid by the borrower and excludes the right of the lender to do so. In other words, there is nothing in the Alabama statute in conflict with paragraph 9 of section 13 of the federal act, or which prohibits the lender from including this charge in the preliminary expense for negotiating the mortgage loan, or from advancing the same under an agreement with the borrower, as provided by said paragraph 9 of section 13 of the federal act. The Alabama statute simply means that this tax must be paid by the lender, the owner of the mortgage, when it is tendered for record and so certified by the probate judge or his clerk before the same is recorded, but as to the source from which the lender gets the fee the state is not concerned.

SAYRE, SOMERVILLE, GARDNER, and THOMAS, JJ., concur.

McCLELLAN, J. (dissenting). The judge of probate of Montgomery county refused to receive and file for record a mortgage by Ashley to secure a loan from the Federal Land Bank; this for the reason, alone, that the sum of $4.50 was not paid as exacted or imposed by schedule 71 of section 361 of Alabama's Revenue Law of 1919. Gen. Acts Ala. 1919, p. 420. This schedule of the Revenue Law provides:

That "no mortgage * * * shall be received for record unless" the privilege or license taxes stipulated therein have been paid "upon such instrument *before* the same shall be offered for record. * * *"

It is further provided therein that these privilege or license taxes shall be—

"paid for by the *lender*, and no such paper shall be received for record unless there is *filed* therewith a certificate that the privilege tax was paid by the *lender*."

Manifestly the "certificate" there prescribed is a certificate made by the *lender*, or by some agent of the *lender*. The office of that certificate is to advise the judge of probate, the registration officer, of the *fact* that the *lender* has paid the privilege tax there exacted. Its design consists with the law's just-stated imposition of the tax upon the *lender*, excluding its exaction of the *borrower*.

The majority of this court declares, in response on rehearing, ante, that the "certificate" required at the time of filing for record, viz. that the tax "was paid by the lender," is a duty enjoined upon the judge of probate, the registration officer. This view is wholly erroneous. A reading of schedule 71 of the Revenue Law will readily disclose the mistake. The "certificate" required of the judge of probate is that prescribed by subdivision "d" of schedule 71 (Acts 1919, pp. 420, 421), and its function is to confine the payment of the privilege tax in question to *one county* only where the mortgage describes property situate in more than one county. That is the "certificate" to which reference is made in the penalty provisions of subdivision "h" of schedule 71 (Acts 1919, pp. 422, 423), and not the "certificate" of lender payment that must be presented when the instrument is filed for record. This certificate by the judge of probate enables the mortgagee to have the benefit of registration in the other counties in which some of the property is situate. This error becomes more important in its consequences when provisions of the act of Congress creating the Federal Land Bank are considered.

The charge imposed upon mortgages, etc., by schedule 71 of the Alabama Revenue Law of 1919, is not an ad valorem tax; it is not a *property* tax. It is, however, a tax upon the exercise or enjoyment of the privilege, afforded by Alabama, of gaining the benefits of the state's registration statutes. Under the laws of Alabama, the payment *by the lender* of this tax is a condition precedent to the *filing* of mortgages, etc., for record, and, if the tax is not paid as schedule 71 requires, the benefits secured by registration are denied the security holder. Can this tax be exacted of a Federal Land Bank as a condition precedent to the filing for record of that bank's mortgage, taken under the system provided by the Federal Farm Loan Act (39 U. S. Stat. at L. part 1, p. 360 et seq. [U. S. Comp. St. § 9835a et seq.])?

If only the local state law was the controlling factor, no debatable question would be presented. The act of Congress creating this institution, Federal Land Bank, is a law that must be obeyed. Indeed, within the sphere of its positive lawful authority, it is superior to the Alabama Revenue Law of 1919. If observance of the Alabama Revenue Law of 1919 involves offense to or disobedience of the act of Congress creating this institution, no agent or officer of the state should obey the state law, much less be compelled to do so. Likewise with respect to the officers or agents of the Federal Land Bank,

whose observance of and obedience to the act of Congress is inescapably required. If there exists unavoidable inconsistency between provisions of the local state law and valid provisions of the act of Congress, such provisions of the state law are invalid. To avert that consequence it is the judicial duty to construe those provisions of the state law so as to harmonize the apparent conflict, if that may be reasonably done under the terms employed in the state law.

To exact this tax of the Federal Land Bank, under the Alabama Revenue Law of 1919, casts the state law into conflict, alternatively at least, with provisions of the act of Congress creating the institution, viz. provisions of section 26 (quoted below) or the ninth subdivision of section 13 of the Federal Farm Loan Act, to be hereinafter reproduced. Section 26 of the Federal Farm Loan Act (39 U. S. Stat. at L. p. 380 [U. S. Comp. St. § 9835q]), so far as presently material, provides:

"That every Federal Land Bank and every national farm loan 'association, including the capital and reserve or surplus therein, and the income derived therefrom, shall be exempt from federal, state, municipal, and local taxation, except taxes upon real estate held, purchased, or taken by said bank or association under the provisions of section 11 and section 13 of this act. First mortgages executed to Federal Land Banks, or to joint-stock land banks, and farm loan bonds issued under the provisions of this act, shall be deemed and held to be instrumentalities of the government of the United States, and as such they and the income derived therefrom shall be exempt from federal, state, municipal, and local taxation."

That the Federal Land Bank and mortgages taken thereby are "instrumentalities" of the United States is not only inherently true, but is so declared by the Congress. The institution and its contemplated activities are public in nature, office, and effect. The institution is affected with no selfish or private design. It was not created for profit or for revenue purposes. With respect to such an institution, such an instrumentality of the United States, the states are not only powerless to subject the government's agency itself to taxation, but "the states have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control the operation of the constitutional laws enacted by Congress to carry into execution the powers vested" in the United States. Weston v. Charleston, 2 Pet. 449, 467, 7 L. Ed. 481; Nat. Bank, etc., v. Mayor, etc., 62 Ala. 284, 291, 292, 293, 34 Am. Rep. 15.

In creating the Federal Land Banks, Congress has not only not permitted the states to subject them to taxation, or to impose the burdens of taxation upon the results of their activities in taking security for loans made, but, to the contrary, Congress has declared, expressly, that mortgages given to these institutions shall be exempt from federal, state, municipal, and local taxation. Nat. Bank, etc., v. Mayor, etc., 62 Ala. 284, 293, 34 Am. Rep. 15. The validity of this feature of the Federal Farm Loan Act has not been questioned. Its validity is not questionable. The exemption thus expressly declared by Congress is from "taxation" by any governmental authority, including the states. As respects mortgages taken under the system, the intent avowed is to forbid the exertion by the states, among other authorities, of the power of taxation. To read these provisions of section 26 as prescribing exemption from either a license tax based on the right to do business in Alabama or an ad valorem tax only is unjustifiably to restrict the effect of the plain terms of section 26. The nature of this governmental instrumentality and the public purpose it was designed to subserve contribute to confirm the view that the Congress entertained the particular intent to deny the application of the power of taxation to mortgages taken by the Federal Land Bank.

It is conceded that the charge imposed by schedule 71 of the Alabama Revenue Law of 1919 is a privilege tax—a tax upon the privilege of availing of the registration laws of Alabama—a tax that must be paid if a lender would receive the important advantages, the protection the registration laws of the state afford. Being an exertion of the power of taxation, the state's charge is offensive to the provisions of section 26 (quoted ante) of the Federal Farm Loan Act which forbid the states and other authorities to subject its mortgages to taxation in any form or through any method not excepted by other (presently unimportant) provisions of the Federal Farm Loan Act. The state's Revenue Act (schedule 71) should not be so construed as to institute such a conflict with the federal act. As may be reasonably done, it should be read as not applying to mortgages taken by the Federal Land Bank, thereby bringing the state law (schedule 71) into harmony with the superior authority of the federal act.

Furthermore, the Federal Land Bank's function is to lend money on the security of land mortgages. Such a business cannot be safely conducted without the benefits, the protection, of the registration laws of this state. Indeed, without recourse to these registration laws the continuing primacy of the security taken for a loan on land in this state cannot be assured. Protection of the right and interest of a first-mortgagee is, in the absence of notice thereof otherwise, afforded alone through the constructive notice that results from seasonable registration of the instrument in the proper county or counties. Code Ala. 1907, §§ 3368–3373. An unrecorded mortgage has not the advantage of the rules of evidence provided by section 3374 of the Code. Aside from another con-

sideration to be adverted to, the Federal Land Bank has not a fair or unembarrassed choice to pay or not to pay this privilege tax as a condition to the registration of its mortgage. The consequence to attend the Land Bank's declination to pay the privilege tax is to deny the bank mortgagee measures of protection and remedy under Alabama's registration laws that would leave the Land Bank no alternative but to suspend its function of loaning money in Alabama. Hence, in this view, the imposition of the privilege tax is an illegal burden upon, an impediment to, the exercise of the government's power and function under the Federal Farm Loan Act. Weston v. Charleston, supra.

2. The Federal Land Bank is without power or authority to pay the privilege tax in question. In unmistakable terms the Alabama Revenue Law of 1919 (schedule 71, quoted ante) requires this tax to be paid by the lender. Section 13, ninth subdivision, of the Federal Farm Loan Act (39 Stat. p. 372 [U. S. Comp. St. § 9835g]) provides:

"Sec. 13. That every Federal Land Bank shall have power, subject to the limitations and requirements of this act—

\*    \*    \*    \*    \*    \*

"Ninth. To charge applicants for loans and borrowers, under rules and regulations promulgated by the Federal Farm Loan Board, reasonable fees not exceeding the actual cost of appraisal and determination of title. Legal fees and recording charges imposed by law in the state where the land to be mortgaged is located may also be included in the preliminary costs of negotiating mortgage loans. The borrower may pay such fees and charges or he may arrange with the Federal Land Bank making the loan to advance the same, in which case said expenses shall be made a part of the face of the loan and paid off in amortization payments. Such addition to the loan shall not be permitted to increase said loan above the limitations provided in section 12."

The carefully guarded definitions of authority conferred on the Land Banks and the limitations with respect to the monetary elements of the debt for which mortgages may be taken (sections 12, 13, and 14 of the Federal Farm Loan Act [U. S. Comp. St. §§ 9835ff–9835gg]) affirmatively exclude the right or power of the bank, the lender, itself to pay any charge or tax of the character in question, except, as the quoted subdivision provides, the bank may "advance the same" to the "borrower" and include that sum in the mortgage debt. The federal act imposes upon the borrower from the Land Bank the payment of "legal fees and recording charges," except the bank may lend the borrower the money to pay the "legal fees and recording charges," and make such advancement a part of the mortgage debt. These are of the "expenses" of the loan, and are made, expressly, obligations of the borrower. Manifestly, to observe the state law (schedule 71) would require the Land Bank, the lender, to pay that which the Federal Farm Loan Act requires the borrower to pay. Both laws cannot be obeyed. In this particular the state law must yield to the supremacy of the Federal Farm Loan Act.

The deliverance in Pocahontas Co. v. Virginia, 113 Va. 108, 73 S. E. 446, is without application to the materially different circumstances here involved. No act of Congress—containing provisions of the nature and effect of sections 26 and 13 (subdivision 9) of the Federal Farm Loan Act—was a factor of compelling influence in that cause. Likewise with respect to the subject-matter of Attorney General Garland's opinion. 18 Ops. of Atty. Gen. pp. 491, 492.

The considerations stated lead to these conclusions: That the indicated feature of schedule 71 of the Alabama Revenue Law of 1919 should be construed to harmonize with the Federal Farm Loan Act; that, when so construed, Alabama's Revenue Law of 1919 does not exact the payment by the Federal Land Bank of the privilege tax in question as a condition precedent to the right to file Ashley's mortgage for record; and that the judge of probate should be compelled by mandamus to accept the instrument for recordation without the precedent exaction of the tax's payment.

I therefore dissent from the denial of the relief sought by the Federal Land Bank, the appellee. I would award the writ prayed.

MILLER, J. (dissenting). The Federal Farm Loan Act (39 U. S. Stat. at Large, pt. 1, § 26, p. 380 [U. S. Comp. St. § 9835q]) provides:

"First mortgages executed to Federal Land Banks \* \* \* shall be deemed and held to be instrumentalities of the government of the United States; and as such they, and the income derived therefrom, shall be exempt from federal, state, municipal, and local taxation."

Under this act this mortgage to the Federal Land Bank is exempt from federal, state, municipal, and local taxation, and it shall be deemed and held to be an instrumentality of the government of the United States. The following property shall be exempt from an ad valorem taxation under the revenue statute:

"All property, real and personal, of the United States. \* \* \* All mortgages, together with the notes, debts and credits secured thereby on real and personal property, situated in this state, which mortgages have been filed for record and the privilege tax paid thereon." Section 2, Revenue Act 1919 (Gen. Acts 1919, p. 283).

A mortgage on real estate and the debt it secures are exempt from any other taxation, provided it has been filed for record and the privilege tax has been paid thereon. Under

the federal statute this mortgage is exempt from state, municipal, and local taxation. If it is unrecorded, it cannot be taxed by the state or county under the federal act. If it is recorded, and pays the privilege tax, it is clearly exempt from any further taxation by the state or county or city. Does the federal act, by exempting it (the mortgage) from state, municipal, and local taxation, thereby include this "privilege tax"? Does the state Revenue Act, by exempting all property of the United States from an ad valorem taxation, thereby exempt this mortgage from this "privilege tax"? Schedule 71 of section 361, Revenue Act of 1919 (Gen. Acts 1919, p. 420), declares in part:

No mortgage which is given to secure the payment of any debt, which conveys real estate within this state, shall be received for record unless the "privilege or license tax" of "fifteen cents for each hundred dollars of such indebtedness, or fraction thereof, which is secured by said mortgage" is paid "upon such instrument before the same shall be offered for record."

A tax of $4.50—a tax of 15 cents on the $100 secured by it—must be paid on "this instrument," this mortgage, "before the same shall be offered for record," unless it is exempt. Shall the mortgagee, the Federal Land Bank, pay a tax of $4.50 on this instrument before it can receive the benefit of the recordation laws of Alabama? This tax is on the mortgage, if it is recorded, if it received the benefits of some of the statutes of Alabama. If it receives the benefits of our laws, the recording statutes, it must be taxed; the mortgage must be taxed, and the lender, the mortgagee—the Federal Land Bank—must pay the tax; and it is taxed according to the amount of the debt it secures, unless it is exempt. This revenue statute—schedule 71—states: "The privilege tax must be paid by the lender." This schedule 71 also provides: When "the amount of the tax required under this schedule" is paid on the mortgage, the judge of probate will certify it on the instrument and such instrument shall be admitted to record, "without the payment of any further tax thereon except the fee to the probate judge for recording" it. When the $4.50 tax is paid on the mortgage, it shall be admitted to record "without the payment of any further tax thereon." This schedule 71 also states:

"There shall be no ad valorem tax collected on any such instrument, or the debt secured thereby which shall have paid the tax prescribed by this schedule, either state, county, or municipal."

The payment of this tax of $4.50—15 cents per $100 on the amount of the debt it secures—on this mortgage when recorded will exempt the mortgage and the debt from any direct ad valorem tax, state, county, or municipal. A similar statute declaring this principle and form of taxation by classifying debts or solvent credits, fixing one rate on recorded mortgage debts and another rate on solvent credits unsecured by mortgages, and debts secured by unrecorded mortgages, has been upheld and approved by this court. This court, speaking through Justice De Graffenried, in State v. Ala. Fuel & Iron Co., 188 Ala. 511, 66 South. 176 (L. R. A. 1915A, 185, Ann. Cas. 1916E, 752), said:

"While the Legislature, in the exercise of that reasonable latitude with respect to the classification of properties for taxation, and in the exercise of its reasonable powers of exempting properties from taxation—powers which all well-considered cases concede it to possess—had the undoubted right to require a privilege tax of all mortgages, deeds of trust, and written evidences of contracts of conditional sales, for their recordation, and to exempt such recorded instruments from an ad valorem tax, the imposition by the Legislature of an ad valorem tax upon all solvent credits not included in the above classification was not only not discriminatory, but it was, in fact, an effort on the part of the Legislature to meet the letter and the spirit of our Constitution, which intends, in so far as a healthy policy will permit, equality in taxation."

The probate judge receives 5 per cent. commissions on and out of the tax as his compensation for collecting and remitting it to the proper officials; the balance of this $4.50 tax will be divided between the state and county, two-thirds to the former and one-third to the latter. Schedule 71, § 361, Revenue Act 1919, p. 421. This schedule 71 of section 361 of the Revenue Act of 1919, p. 420, also provides:

"When the property described in said instrument is situated within different counties within this state, then the judge of probate who collects said taxes shall pay over the amount due the county treasurer to the county treasurer of each of the different counties in which said property is situated, an amount of said taxes that would be in proportion to the value of the property therein as compared to the value of the whole property within this state described in said instrument."

It appears, if the mortgage is on property in different counties, the tax one-third (less commissions) belonging to the counties shall be prorated among the counties in which the property is located according to the value of the property in each county, as compared to the value of the whole property in the mortgage. The tax is fixed on the face value of the debt secured by the mortgage, and the tax is divided among the counties according to the value of the property in each county in the mortgage as compared to the value of the whole property in the mortgage.

When a mortgage is recorded, embracing property in different counties, the amount of the secured debt regulates the amount of

the tax; but the value of the land in each county in the mortgage determines the division of the tax to the counties. This section 361, schedule 71, of said Revenue Act of 1919, p. 420, also provides:

"If any part of the property embraced or described in any instrument which is required under this schedule to pay a record privilege tax is located without this state, the indebtedness upon which the tax shall be paid for the privilege of recording such instrument shall be that proportion of the indebtedness secured by the instrument which the value of the property located in this state bears to the whole property described in said instrument. The state tax commission may ascertain the value of the whole property, and of that part of it which is located within this state, for the purpose of ascertaining the amount of the indebtedness upon which said tax shall be paid."

When a mortgage is filed for record in this state, embracing property within and without the state, the tax is not based on the total amount of the mortgage debt. The state tax commission, under rules fixed by the statute, ascertains the value of the whole property in the mortgage and the value of that part of the property located in Alabama, for the purpose of determining the proportion of the secured indebtedness upon which said tax shall be paid. The value of the whole property and the value of the property in Alabama in the mortgage, aids and guides in prorating the amount of the secured debt, and thus determines the amount of the tax to be collected on the mortgage debt.

These provisions in the statute indicate the tax of 15 cents on each $100 of the face value of the debt secured by the mortgage is in its very nature ad valorem. It is not unconstitutional as the property (recorded mortgage debt) is classified, and all of that class is taxed uniformly and equally. State v. Ala. Fuel & Iron Co., 188 Ala. 511, 66 South. 169, L. R. A. 1915A, 185, Ann. Cas. 1916C, 752. And the rate, 15 cents on each $100 of the mortgage debt, is less than the maximum rate fixed by the Constitution. Section 214 of the Constitution of 1901 reads:

"The Legislature shall not have power to levy in any one year a greater rate of taxation than $65/100$ of 1 per centum on the value of taxable property within this state."

The Constitution permits a maximum annual tax of $65/100$ of 1 per cent. on the value of taxable property. This mortgage debt is taxable property; it is taxed 15 cents on each $100 of its full face value. A real estate mortgage debt is subject to this annual tax on its value, unless this registration tax on its face value is paid. Sections 2 and 5 and section 361, schedule 71, Acts 1919, pp. 283, 284, 420.

This registration tax is a tax on the value of the property; it is on the face value of the amount of the mortgage debt, and the mortgage debt is property. This registration tax is on the mortgage debt when the mortgage is recorded, and it is based on its value, the face value of the debt secured by it. The mortgagee of a real estate mortgage is forced by this law to file for record his mortgage and pay the registration tax on the face value of the debt secured by it, or to pay an annual tax on the assessed cash value of the mortgage debt. The former tax is small, and is paid only once during the life of the mortgage; and the latter tax is large, and must be paid annually during the life of the mortgage.

This tax law is in the Revenue Act for revenue purposes, to raise revenue to be used for the public. It is not in the recordation statute for recording purposes, to pay recording expenses. It is in no sense a fee or cost. It is called in name "privilege or license tax." The court must look beyond the name to the substance of the statute for the real purpose of it, and to determine its true intent. Its name may prove a misnomer. 26 R. C. L. p. 36, § 19, headnote 19 and 1; State of Washington v. Case, 39 Wash. 177, 81 Pac. 554, 1 L. R. A. (N. S.) 152, 109 Am. St. Rep. 874.

Deeds are not choses in action. They are not property that is made subject by statute to an ad valorem tax. This "privilege or license tax" for recording instruments does not apply to deeds. It does not apply to wills. Real estate mortgage debts are choses in action. They are personal property. They are subject to an ad valorem tax, if not recorded and the recording tax paid. This "privilege or license tax" for recording instruments applies to them. They are taxed according to the value of the property, the value of the debt, the full face value of the debt they secure, when presented for recordation. Chattel mortgages and the debts they secure, and conditional sales and the debts secured are choses in action; they are personal property, subject to an ad valorem tax, if not recorded and the recording tax paid, under this revenue statute. It appears this Revenue Act taxes as a "privilege or license" for being recorded only those instruments securing debts, which are choses in action; they are property, and they are subject to an ad valorem tax, if not recorded. Is it a bona fide recordation "privilege or license tax"? Is it a bona fide "privilege tax" or "license tax," to obtain the privileges secured by recording? If so, then why were not all instruments taxed by the Revenue Law that reap benefits from being recorded? Deeds and wills pay no privilege tax to be recorded. Just those instruments which are personal property, choses in action, subject to an annual direct ad valorem tax, are placed under the name of "privilege or license tax," and required to pay a small tax if recorded, and a large tax if not recorded. Is the name a misnomer? Does it not look like the Legislature intended by this revenue statute to place a small ad

valorem tax based on the full face value of the secured debts of these instruments if recorded, or to place a larger annual ad valorem tax on them, based on their assessed cash value, if not recorded? This court in the case of State v. Ala. Fuel & Iron Co., 188 Ala. 487, 66 South. 169, L. R. A. 1915A, 185, Ann. Cas. 1916E, 752, in effect declared it could be done under our Constitution. It appears the Legislature by this statute was following that opinion.

Ad valorem means literally "according to value"; as applied to the subject of taxation, it means "a tax or duty upon the value of the article or thing subject to taxation." 2 Corpus Juris, p. 30. It is true this law was first enacted in Alabama in 1903. Gen. Acts 1903, p. 227. It is similar in many respects to the present revenue statute on that subject. In Barnes v. Moragne, 145 Ala. 313, 41 South. 947, this court, by divided vote of four to three, wrote on the subject of the act of 1903:

"In fact, it only provides for a 'privilege tax' on recorded mortgages, once for the life of the mortgage, which is in no sense an ad valorem tax."

If this is a correct interpretation of the statute, then a mortgage debt can be taxed for the recordation of the mortgage at the will of the Legislature, on the full face value of the secured debt, without limitation as to the amount of the "privilege or license tax"; and the Legislature can, if they so desire, also levy an ad valorem tax annually to the constitutional limit (section 214 of the Constitution of 1901) on the same mortgage debt. We cannot approve of this interpretation of this statute. It is dangerous. It would permit mortgage debts to be taxed beyond the constitutional maximum. The will of the Legislature should be controlled by the Constitution; the taxes levied and collected should be within its limits, and no property should be taxed twice. The case of Barnes v. Moragne, 145 Ala. 313, 41 South. 947, was modified and overruled in part by State v. Ala. Fuel & Iron Co., 188 Ala. 487, 66 South. 169, L. R. A. 1915A, 185, Ann. Cas. 1916E, 752.

In 26 R. C. L. p. 36, § 19, headnote 1, we find this:

"A tax on mortgages, though purporting to be a registration fee, is really a tax on the mortgages themselves, and so is a property tax."

This tax on mortgages purports to be and is called a "privilege or license tax"; yet it really taxes each $100 secured by it 15 cents. This is in reality a property tax. It gives you the privilege of the recordation statutes, and it gives you the privilege of exempting your secured debt from an annual ad valorem tax, if you record your mortgage and pay a small tax of 15 cents on each $100 secured by it; yet, if you do not accept the privilege offered,

present for record the mortgage and pay that small tax on its debt, you are met face to face with a real and larger tax—a direct annual ad valorem tax—on the assessed cash value of the mortgage debt. It purports to be a "privilege or license tax," but it is a tax on the mortgage debt, and is a property tax.

This mortgage of the Federal Land Bank is an instrumentality of the federal government, it is personal property of the United States, and it is exempt from this $4.50 tax by the federal statute (39 U. S. Stat. at Large, pt. 1, § 26, p. 380. [U. S. Comp. St. § 9835q]), and by the state revenue statute (section 2, Gen. Acts 1919, p. 283).