(123 So. 6)

**LEE v. STATE TAX COMMISSION OF ALABAMA et al.**   (3 Div. 903.)

Supreme Court of Alabama.   June 6, 1929.

514

John S. Coleman, S. M. Bronaugh, and Bradley, Baldwin, All & White, all of Birmingham, for appellant.

Charlie C. McCall, Atty. Gen., for appellees.

THOMAS, J. The case was tried on an agreed statement of facts, and respondents filed a plea of general issue denying the allegations of the petition. The judgment was for the respondents, and the writ of mandamus denied.

The subject of classification for the purpose of taxation has been often discussed by the courts. Warrior Water Co. v. Long, 218 Ala. 125, 117 So. 656. It is agreed that a taxing statute is not void if the classification employed is reasonable and in its application it does not offend the requirements for equality and uniformity. Phœnix Carpet Co. v. State, 118 Ala. 143, 22 So. 627, 72 Am. St. Rep. 143; State v. Ala. Fuel & Iron Co., 188 Ala. 487, 66 So. 169, L. R. A. 1915A, 185, Ann. Cas. 1916E, 752; State v. Kidd, Ex'r, 125 Ala. 413, 28 So. 480; Kidd v. State of Alabama, 188 U. S. 730, 23 S. Ct. 401, 47 L. Ed. 669; Soon Hing v. Crowley, 113 U. S. 708, 5 S. Ct. 730, 28 L. Ed. 1145.

Has it been declared that the state may exempt securities of foreign corporations owned by residents of this state from ad valorem taxation and exact in lieu thereof a privilege tax for recordation notice of ownership? State v. Kidd, 125 Ala. 413, 28 So. 480; Phœnix Carpet Co. v. State, supra; R. I. & S. Co. v. State, 204 Ala. 469, 86 So. 65; American Sugar Refining Co. v. Louisiana, 179 U. S. 89, 21 S. Ct. 43, 45 L. Ed. 102; International Harvester Co., etc., v. State of Missouri, 234 U. S. 199, 34 S. Ct. 859, 58 L. Ed. 1276, 52 L. R. A. (N. S.) 525.

The distinction between property and excise taxes is recognized. 1 Cooley on Tax. pp. 132, 133. The tax levied under the provisions of sections 44 to 52 of the Revenue Act of 1927 (Acts 1927, pp. 139, 174–176), is an excise or license tax and not a property tax. Long, Judge, v. Jasper Land Co., 217 Ala. 593, 117 So. 210; Garrison v. Hamlin, 215 Ala. 39, 109 So. 106; Hamilton v. Williams, 214 Ala. 89, 106 So. 500; State v. Stiles, 212 Ala. 468, 102 So. 901; State v. Ala. F. & I. Co., 188 Ala. 487, 66 So. 169, L. R. A. 1915A, 185, Ann. Cas. 1916E, 752. The former is an indirect tax, and as such is not subject to the several limitations contained in sections 211 and 217 of the Constitution. Exchange Drug Co. v. State Tax Com., 218 Ala. 115, 117 So. 673; Phœnix Carpet Co. v. State, 118 Ala. 143, 22 So. 627, 72 Am. St. Rep. 143; State v. Ala. F. & I. Co., supra; Barnes v. Moragne, 145 Ala. 313, 41 So. 947; Crosland, Judge, v. Federal Land Bank, 207 Ala. 456, 93 So. 7; Flint v. Stone Tracy Co., 220 U. S. 107, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312; 1 Cooley on Tax. pp. 132, 133, 146; Oliver Iron Mining Co. v. Lord, 262 U. S. 172, 43 S. Ct. 526, 67 L. Ed. 929; 37 C. J. 172; Roberts & Schaefer Co. v. Emmerson, 271 U. S. 50, 46 S. Ct. 375, 70 L. Ed. 1154. This court has sustained the right of issue of nonpar stock by corporations. Randle v. Winona Coal Co., 206 Ala. 254, 89 So. 790, 19 A. L. R. 118, 131; 36 A. L. R. 791; 45 A. L. R. 1501. Is the difference between such stock and that with stated par value a substantial difference on which to base a taxation classification? The difference between new public utility that is being constructed for the first year's business, and that taking over an old and a going public utility, was the basis for classifications and for differing license taxes, and held not arbitrary or unreasonable, Warrior Water Co. v. Long, 218 Ala. 125, 117 So. 658; and the taxation of shares of stock of foreign corporations and not that of shares of stock of domestic corporations is the subject of discussion in Kidd v. State, 188 U. S. 730, 23 S. Ct. 401, 47 L. Ed. 669.

This power as a proper selection of the objects and classifications for taxation, within the required limitations, is thus stated by Mr. Chief Justice Brickell in Phœnix Carpet Co. v. State, 118 Ala. 143, 152, 22 So. 627, 628 (72 Am. St. Rep. 143), as follows: "The equality and uniformity consists in the imposition of the like tax upon all who engage in the avocation, or who may exercise the privilege taxed; and if it be a franchise tax, upon all corporations belonging to the class upon which it is imposed. 1 Desty on Taxation, § 36; Cooley on Taxation (2d Ed.) 378; Delaware Railroad Tax, 18 Wall. 206 [21 L. Ed. 888]; City

of New Orleans v. Kaufman, 29 La. Ann. 283 [29 Am. Rep. 328]; Durach's Appeal, 62 Pa. 491. The General Assembly in the legitimate exercise of the taxing power, may impose direct taxes on lands only, to the exclusion of every variety or species of personal property; or, it may not tax lands, and subject personal property only to direct taxation. This is within the general grant of the power of taxation, which of necessity involves the power of selecting that property or species of property which in the judgment of the legislature is the better able to bear the burden of taxation. And, as is said by Judge Cooley, 'What is true of property is true of privileges and occupations also; the State may tax all, or it may select for taxation certain classes and leave the other untaxed. Considerations of general policy determine what the selection shall be in such cases, and there is no restriction on the power of choice unless one is imposed by the Constitution.' Cooley on Taxation, 570. Corporations are of every character and variety; have grown to be almost as various and diverse in their franchises, as are the avocations or pursuits of natural persons."

■■ We shall indicate that the result is that the state may tax such property as it sees fit, and exempt other property, so long as no arbitrary classifications result in the subjects taxed and those made the subject of exemptions; that the state can levy an ad valorem tax on securities of domestic corporations and exempt securities of foreign corporations owned by residents in this state, or it can exempt such foreign securities from all ad valorem taxation and levy an excise or privilege tax in lieu thereof. This was stated conversely in the case of Kidd v. State, 188 U. S. 730, 23 S. Ct. 401, 47 L. Ed. 669, as follows: "The equal protection of the laws is not denied by the provisions of Ala. Code 1886, § 453, cl. 13, and Code 1896, § 3911, cl. 14, for the taxation of railroad stock, because of the exemption of stock in domestic railroads and in others that list substantially all their property for taxation."

And in American Sugar Ref. Co. v. Louisiana, 179 U. S. 89, 94, 21 S. Ct. 43, 45, 45 L. Ed. 102, 104, these words are employed:

"In Pembina Consol. Silver Min. & Mill. Co. v. Pennsylvania, 125 U. S. 181, 8 S. Ct. 737, 31 L. Ed. 650, 2 Inters. Com. Rep. 24, it was decided that the equal protection clause did not prohibit a state from requiring, for the admission within its limits of a corporation of another state, such conditions as it chooses, though in that case it exacted a license tax from such corporations, which it did not exact from corporations of its own creation. In Missouri P. R. Co. v. Mackey, 127 U. S. 205, 8 S. Ct. 1161, 32 L. Ed. 107, it was said that this clause did not forbid special legislation, 'and when legislation applies to particular bodies or associations, imposing upon them additional liabilities, it is not open to the objection that it denies to them the equal protection of the laws, if all persons brought under its influence are treated alike under the same conditions.' To the same effect is Walston v. Nevin, 128 U. S. 578, 9 S. Ct. 192, 32 L. Ed. 544.

"The power of taxation under this provision was fully considered in Bell's Gap R. Co. v. Pennsylvania, 134 U. S. 232, 10 S. Ct. 533, 33 L. Ed. 892, in which it was said not to have been intended to prevent a state from changing its system of taxation in all proper and reasonable ways. It may, if it chooses, exempt certain classes of property altogether; may impose different specific taxes upon different trades or professions; may vary the rates of excise upon various products; may tax real and personal estate in a different manner; may tax visible property only, and not securities; may allow or not allow deductions for indebtedness. 'All such regulations, and those of like character, so long as they proceed within reasonable limits and general usage, are within the discretion of the state legislature or the people of the state in framing their Constitution.' See also Home Ins. Co. v. New York, 134 U. S. 594, 10 S. Ct. 593, 33 L. Ed. 1025, St. Louis, I. M. & S. R. Co. v. Paul, 173 U. S. 404, 19 S. Ct. 419, 43 L. Ed. 746."

We are thus informed by the Supreme Court of the United States that the state, in dealing with the securities of foreign corporations, may classify the same differently from local securities; that an ad valorem tax can be levied on the one species, and the other class exempt without offending the Federal Constitution. And it results that there was likewise the right, as to such classes or classifications of securities, to exempt the one from ad valorem taxation and levy in lieu thereof an excise or privilege tax for the recording of notice of ownership of the same.

The subject of subclassification was undertaken by the Legislature in dealing with the securities of any foreign corporations (section 44, Revenue Act), contained in sections 51(a, d) and 52 of the Revenue Act, and in the imposition of the privilege or license tax. The classifications are as follows: (1) "Upon all such securities * * * the *par value* or principal amount of *which does not* exceed One Hundred Dollars ($100)," (2) "Upon all such securities the *par value* or principal sum of which is more than One Hundred Dollars ($100.00), *the sum* of Twenty-five (25¢) *for each* One Hundred Dollars ($100.00) of value or fraction thereof is shown in said list," (3) and "shares of stock having no nominal or par value, included in any such list of securities, shall be taken in the determination of said tax as equal to One Hundred Dollars ($100.00) par value per share, unless the actual value thereof be otherwise shown affirmatively on the list thereof to the satisfaction of the State Tax Commission, in which event the sum to be paid shall be

twenty-five cents for each One Hundred Dollars ($100.00) of the value thereof so shown," and (4) in the provision "there shall be no ad valorem tax assessed or collected upon any security included in any list on account of which the tax prescribed by this act shall have been paid, either state, county, or municipal, either for the year in which listed, or for any preceding year, and such listing and payment shall on and after the date thereof be a bar to any legal proceedings by or on behalf of the state or any county or municipality of the state for the enforcement or collection of any escape taxes on account of the security included in any such list," and (5) the provision and classification for "the securities hereinbefore mentioned," which are not so listed as provided by the act, "with the State Tax Commission," shall "become liable for state, county and municipal taxes," are not arbitrary and offensive to the requirements of equality. Acts of 1927, pp. 175, 176.

In the recent decision in Roberts & Schaefer Co. v. Emmerson, 271 U. S. 50, 46 S. Ct. 375, 70 L. Ed. 827, 45 A. L. R. 1495, by Mr. Justice Stone, it is recognized and declared that different subjects of classification are sufficient to justify classification for the basis of assessing franchise taxes, "so that the tax, where the stock is par value, may be based on the value at which it is issued, while the tax, in case of no par-value stock, may be based on the highest valuation at which it may be issued." See, also, State v. Pierce Petroleum Corp. (Mo. Sup.) 2 S.W. (2d) 790; American U. Co. v. Commonwealth, 237 Mass. 42, 129 N. E. 622.

■ The difference in the two classes of securities—par value and no par value—is substantial and justifies different classification for the purpose of taxation. It cannot be that the provision for *no par value* listing (not stating value) in the statute of 1927 gave an illegal discrimination as against holders of no par value stock where *the actual value thereof* is affirmatively shown by its listing and registration. When the act is considered pari materia, the tax commission has full power to determine the actual value thereof and the amount of the license or franchise required of the value so ascertained and fixed of no par value stock. In section 46, p. 174, of the Revenue Act 1927, it is provided, among other things: "The State Tax Commission, upon making the record of any such list of securities, shall certify on the same when it was received and recorded and in what book and page the same is recorded, and shall deliver the original of such list so certified to the party entitled thereto, or his order, on the payment of the fees for recording the same, but the secretary may refuse to endorse 'filed' on any such list of securities or to record the same until his fees for the recording thereof are paid, and shall make such rules and regulations as it deems necessary to carry out the provisions of this Act."

It would be a strained construction to place upon the Revenue Act, and provisions for the collection of revenues, to hold that it was not the legislative intent that the tax commission should not have full power to ascertain and determine the value of the shares of such stock, and that the value placed or fixed thereon by the owner should be final and authorize listing or registration of same. It is evident that such was not the legislative intent, as we have hereinabove set out from the statutes. The words "to the satisfaction of the State Tax Commission" imply the right to investigate and ascertain its "actual value" as a condition precedent to listing the same on payment of the required amount.

■ In this connection, "It is important" that we "keep in mind our definition of stock in a corporation: It is 'only evidence of the right of the holder or owner to share in the proceeds of the corporation's property,' and typifies an aliquot part of the corporation's property, or the right to share in its proceeds, to the extent indicated, 'when distributed according to law and equity'" (Randle v. Winona Coal Co., 206 Ala. 257, 89 So. 793, 19 A. L. R. 122); and also that the tax commission is authorized to promulgate reasonable rules, regulations. and procedure necessary to a just and effective administration of the many provisions of the Revenue Act (Acts 1923, p. 185, § 67; Acts 1919, p. 698, § 4; section 7012, Code of 1928).

■ It is no valid objection that the Legislature has, to the extent indicated, assigned a "flat rate" of $100 per share for no par stock, regardless of the fact that its value may be less and to that extent different, as between par value stock and no par value stock. This insistence was declared against by the Supreme Court of the United States in Roberts v. Emmerson, 271 U. S. 55, 46 S. Ct. 377, 70 L. Ed. 833, 45 A. L. R. 1495. Mr. Justice Stone said:

"It is argued that the tax imposed is a tax at a flat rate per share on no par-value stock, regardless of its value, so that different corporations are taxed at different amounts although their no par-stock was issued for the same total amount of capital; and that the tax is based upon an unreasonable and discriminatory classification in which no par-value stock is placed in one class and taxed at an arbitrary valuation of $100 per share, while par-value stock is placed in another class and taxed at the value at which it is authorized to be issued. Both arguments leave out of account the nature of the tax and the essential differences between the two classes of stock.

"The tax is imposed as a franchise tax upon a domestic corporation doing business only within the state. Its power to issue shares of both classes is derived from the laws of Illinois. The amount which may be issued; the manner of issue; the liability of

holders of these shares and all other incidents of them, are regulated by the law of that state. The tax is not a property tax imposed on shares of stock or on the assets of the corporation. It is a tax on the corporate franchise, which includes the privilege, whether exercised or not, of issuing and using when issued, a particular kind of stock known as 'no par-value stock.' As the stock may, under the statute, be issued for as much as $100 a share, if the company so chooses, the statute fixes the maximum extent to which the privilege may be exercised as the basis for computing the tax.

"Neither this privilege nor the corresponding privilege of issuing par value stock bears any necessary relation to the value of the stock or the assets of the corporation; and the tax is imposed whether or not the stock is issued and without regard to the value of the stock or of the corporate property. We cannot say that the value of the corporation's franchise may not be measured by the number of no par shares which may be issued rather than their value when issued. The only question with which we need be concerned is whether there are such differences between the two privileges to issue the two classes of stock, as to constitute a proper basis for classification for purposes of taxation, so that the amount of the tax in the one case, may be based on the issue price of the stock, and in the other upon the maximum price at which it may be issued, regardless of the price at which it actually is issued. * * *

"These differences both in the legal incidents and in the practical uses of the two classes of stock, not only are a basis for classification of them for purposes of taxation, but make unavoidable certain differences in the method of assessing this tax. Authorized capital stock cannot well be used as the measure of a tax unless some arbitrary value is assigned to the no par shares; for they may be issued from time to time at varying prices and until issued, they cannot have any value. To require the stock to be issued at a value fixed in advance of its issue, and to make that value the basis of the tax, would in effect abolish no par stock. Because of the essential differences between the two kinds of stock, it is difficult to conceive of any other method of assessing the tax which would save the character of no par-value stock and not result in similar inequalities."

■ It is no objection that it is declared in section 52 that, "In event the securities hereinbefore mentioned are not listed as herein provided with the State Tax Commission, same shall become liable for State, County and municipal taxes." As we have indicated, there is a substantial basis for all of. the classifications employed in the statutes. under consideration, and they are not arbitrary and do not offend the requirements as to equality, etc. There is analogy in the several classifications and exemptions contained in our taxing statutes. To illustrate, money hoarded (but not on deposit with a bank) is taxed ad valorem, Gen. Acts 1919, p. 282, § 5, subsection f; money employed in business that amounts to a solvent credit is not taxed, is exempt, Gen. Acts 1923, p. 152, § 2, subsec. a; Bower, Tax Col. v. American Lumber & Export Co., 195 Ala. 572, 71 So. 100; money loaned on a mortgage, and which instrument is not recorded, is taxable ad valorem, Gen. Acts 1919, pp. 282, 286, 287, § 5, subsections g and m; and money loaned on a mortgage that is recorded and the excise fees paid is not taxable otherwise than the excise tax provided, Gen. Acts 1923, p. 152, § 2; State v. Ala. F. & I. Co., 188 Ala. 487, 66 So. 169, L. R. A. 1915A, 185, Ann. Cas. 1916E, 752.

In the case of State v. Alabama Fuel & Iron Co., supra, this court overruled the dictum in Barnes v. Moragne, 145 Ala. 313, 41 So. 947, cited in L. R. A. 1916A, p. 865, and declared:

"The revenue law providing for a tax for recording mortgages, deeds of trust, or written contracts of conditional sale, and providing that no ad valorem tax shall be collected on any such instrument, or the debts thereby secured, after such recording tax has been paid, but also levying an ad valorem tax on all moneys lent solvent credits, or credits of value, except such as are secured by mortgage, deed of trust, or written conditional contract of sale on which a recording tax has been paid, is not violative of section 211, Constitution 1901; the legislature having full power to classify for taxation moneys and credits secured by written instruments and other solvent credits not so secured.

"The constitutional limitation requiring property to be assessed in proportion to value is designed to secure uniformity and equality of enforcement of the ad valorem system of taxation, and to prohibit arbitrary and capricious modes without reference to value, but it does not require that all property be taxed, nor prohibit exemption from taxation or such classifications of property as are not purely arbitrary, capricious or without semblance of reason."

See, also, Crosland, Judge, v. Federal Land Bank, 207 Ala. 456, 93 So. 7, declaring such registration fee a privilege or excise tax for recordation, and not a direct tax that is the subject of the exemptions of the Farm Loan Act. 39 U. S. Stat. 372, 380, § 13, subsec. 9 and § 26 (U. S. Comp. St. §§ 9835g, 9835q; 12 USCA § 781 (9), and §§ 931–933).

There are no marks of differentiation in essential characteristics here pertinent between the mortgage registration excise tax and the 1927 excise tax on foreign securities. It follows from the decisions that the state may provide a license tax for the registration of foreign securities, and exempt such se-

curities so registered from other or ad valorem tax; and provide and levy an ad valorem tax on all such securities not so listed and the license tax thereon paid. State v. Alabama Fuel & Iron Co., 188 Ala. 487, 66 So. 169, L. R. A. 1915A, 185, Ann. Cas. 1916E, 752; Union Trust Co. v. Detroit, 170 Mich. 692, 137 N. W. 122; Mutual Benefit L. Ins. Co. v. Martin, 104 Minn. 179, 116 N. W. 572; Pocahontas Co. v. Commonwealth, 113 Va. 108, 73 S. E. 446; Trustees, Executors' & Securities Ins. Corporation v. Hooton, 53 Okl. 530, 157 P. 293, L. R. A. 1915E, 602; People v. Trust Co., 205 N. Y. 74, 98 N. E. 207.

We have observed that the state tax commission has full power to determine, to its "satisfaction," the value of the shares of stock as a condition precedent to registration and the amount of excise tax to be exacted and paid. It is provided and required in Acts 1923, p. 185, § 67, that all assessments on property, privileges, and franchises in the state shall be made in exact proportion to the fair and reasonable market value thereof in substantial requirements of law. This presupposes investigation and determination of that reasonable and fair market value to the "satisfaction" of the state tax commission. Laws of 1923, p. 185, § 67; Acts 1927, pp. 174, 175, §§ 46, 51; section 7012, Code of 1923.

In recognizing the analogy in the provisions of sections 44–52, Revenue Act 1927, to recorded mortgages, and providing a like and reasonable method of registration of the claim of ownership and privilege tax similar to the mortgage recording tax, with the specific exemptions provided from ad valorem taxation of all securities so registered, was a valid exercise of the taxing power, and offends no provisions of organic law, state or federal.

The trial court committed error in holding the provisions of the Revenue Act of 1927 in question are unconstitutional and in not awarding the writ prayed by petition.

The judgment of the lower court is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.

SAYRE, BOULDIN, and BROWN, JJ., dissent.

BOULDIN, J. (dissenting). I cannot escape the conviction that the plan for taxing foreign securities found in sections 44 to 52 of the General Revenue Act of 1927 (Acts 1927, p. 174 et seq.) is violative of the uniformity provision of our State Constitution, § 211.

Upon the owner's voluntary listing of such securities with the state tax commission, he is privileged to pay at a reduced rate far below that at which other property is taxed. Indeed, one rate is fixed on securities of this class if listed with the state tax commission and a different rate if listed with or by the tax assessor.

True, the act calls the reduced tax a privilege tax. A study of its provisions discloses no privilege made the subject of taxation.

The list need not disclose the name of the beneficial owner. Section 45.

By section 50 the record of such list is not notice to any purchaser or pledgee for value, and is declared operative only until such time as the owner shall part with such securities.

Clearly enough the scheme is not intended to provide a registry of title and transfers of record, but intends that all such stocks, bonds, etc., shall be transferable in the usual manner and without reference to this recorded list. Under the terms of the statute itself, no one can look at the recorded list on any given day, and there find who is the owner of such securities.

Designation of the reduced tax as a privilege tax is, therefore, merely colorable. The only privilege of value is the partial exemption thus secured.

The entire argument on the question of classification for the purpose of levying privilege taxes, we respectfully submit, is beside the mark. We think this an ad valorem, not a privilege, tax. Who would pay 2½ mills for the mere privilege of listing his securities?

He is invited to list them and pay this tax to avoid section 52, imposing a full ad valorem tax if he fails so to do.

The authority of the Legislature to exempt this class of property from state, county, and municipal taxes is not the question at issue. The issue is this: Can the Legislature, under the authority to exempt, impose a greatly reduced tax upon those who voluntarily come forward and list their securities, and a much higher rate on those who do not? If so, the uniformity provision is, in our opinion, entirely wiped out. If this statute can apply to securities, it can apply to live stock, to jewelry, to any species of property the Legislature may elect. By this statute the owner gets a reduced rate by merely claiming it in a prescribed manner.

Whether or not this species of property ought to be taxed on a full ad valorem basis or on a lower one, we cannot consider. The gross rates of state, county, and city taxes may consume an unduly large proportion of the income from many such securities. It is not with us nor with the Legislature to determine whether all classes of property taxed at all must be taxed at the same rate. We must uphold our Constitution as it is.

SAYRE and BROWN, JJ., concur in the foregoing dissent.