## AMERICAN SUGAR REFINING COMPANY *v.* LOUISIANA.

ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

No 38.   Submitted October 10, 1900.—Decided November 5, 1900.

A state statute imposing a license tax upon persons and corporations carrying on the business of refining sugar and molasses does not, by exempting from such tax "planters and farmers grinding and refining their own sugar and molasses," deny sugar refiners the equal protection of the laws within the Fourteenth Amendment.

THIS was a petition filed in the Civil District Court for the Parish of Orleans by John Brewster, tax collector, against the American Sugar Refining Company, a corporation engaged in the business of refining sugar and molasses, to recover the sum of $3500 per year as a state license tax for the years 1892 to 1897, inclusive, alleged to be due under the act of July 9, 1890, of the State of Louisiana, enacted in 1890, entitled "An act to levy, collect and enforce payment of an annual license tax upon all persons, associations of persons or business firms and corporations pursuing any trade, profession, vocation, calling or business, except those who are expressly excepted from such license tax by articles 206 and 207 of the constitution."

By the ninth section it is enacted "that for carrying on each business of . . . refining sugar and molasses . . . the license shall be based on the gross annual receipts of each person, association of persons, business firm or corporation engaged in said business, as follows: Provided, that this section shall not apply to *planters and farmers grinding and refining their own*

*sugar and molasses;* . . . And provided further, that it shall not apply to those planters who granulate syrup for other planters during the rolling season."

First class. When the said gross actual receipts are $2,500,000 and over, the license shall be $3500.

This act was passed in pursuance of Article 206 of the state constitution of 1879, which reads as follows:

" ART. 206. The general assembly may levy a license tax, and in such case shall graduate the amount of such tax to be collected from the persons pursuing the several trades, professions, vocations and callings. All persons, associations of persons and corporations pursuing any trade, profession, business or calling, may be rendered liable to such tax, except clerks, laborers, clergymen, school teachers, those engaged in agricultural, horticultural, mechanical and mining pursuits, and *manufacturers* other than those of distilled alcoholic or malt liquors, tobacco and cigars and cotton seed oil. No political corporation shall impose a greater license tax than is imposed by the general assembly for state purposes."

Defence: First, that the business of refining sugar and molasses is exempt from the payment of any license tax, because it is one of those *manufactures* enumerated in Article 206 as entitled to exemption. Second, that the act of 1890 " violates the Constitution of the United States, and is void in so far as it attempts to impose a license tax on this defendant, because said act denies to this defendant the equal protection of the laws of the State, inasmuch as said act does not impose equally a license tax on all persons engaged in the business of refining sugar and molasses, but discriminates in favor of planters who refine their own sugar and molasses, and in favor of planters who granulate syrups for other planters during the rolling season."

The court, being of opinion that the business carried on by the defendant company was that of a manufacturer, dismissed the petition. On appeal to the Supreme Court, that court was of opinion that the defendant was not entitled to exemption under Article 207 of the constitution, (not now in question,) which exempted certain manufacturers, and ordered a judg-

ment for $3500 with interest and costs for the license tax for the year 1897. But, upon the attention of the court being called by a petition for rehearing to Article 206 of the constitution, above quoted, that court delivered a new opinion to the effect that the defendant was not a manufacturer, and therefore not entitled to an exemption by Article 206, and that the exemption of planters who refine their own sugar did not deprive the defendant of the equal protection of the laws. It further revised its judgment, and held the State entitled to recover for each of the years from 1892 to 1897, and rendered judgment for the sum of $3500, for each of said years. Whereupon defendant sued out a writ of error from this court.

*Mr. John E. Parsons, Mr. Charles Carroll, Mr. Joseph W. Carroll* and *Mr. H. B. Closson* for plaintiffs in error.

*Mr. E. Howard McCaleb* for defendants in error.

MR. JUSTICE BROWN delivered the opinion of the court.

Motion was made to dismiss this writ of error upon the ground that the case did not present a Federal question, inasmuch as the question of illegal discrimination " was not the principal matter litigated, but was put in the record for the purpose of obtaining this writ of error." As, however, the protection of the Fourteenth Amendment was invoked in the answer, and, as this defence is at least plausible upon its face, the motion to dismiss must be denied; but, the case having also been submitted upon the merits, we shall proceed to discuss the constitutional objection to the act.

It is scarcely necessary to say that the question whether the defendant were a *manufacturer* within the meaning of the Louisiana constitution is one dependent upon the construction of that constitution, and that the interpretation given to it by the state Supreme Court, raising as it does no question of contract, is obligatory upon this court; but as that court held the defendant liable upon the ground that it was engaged in the business of refining sugar, the further question is presented

whether it is denied the equal protection of the laws because of the exemption from the tax of planters grinding and refining their own sugar and molasses.

The act in question does undoubtedly discriminate in favor of a certain class of refiners, but this discrimination, if founded upon a reasonable distinction in principle, is valid. Of course, if such discrimination were purely arbitrary, oppressive or capricious, and made to depend upon differences of color, race, nativity, religious opinions, political affiliations or other considerations having no possible connection with the duties of citizens as taxpayers, such exemption would be pure favoritism, and a denial of the equal protection of the laws to the less favored classes. But from time out of mind it has been the policy of this government, not only to classify for purposes of taxation, but to exempt producers from the taxation of the methods employed by them to put their products upon the market. The right to sell is clearly an incident to the right to manufacture or produce, and it is at least a question for the legislature to determine whether anything done to prepare a product most perfectly for the needs of the market shall not be treated as an incident to its growth or production. The act is not one exempting planters who use their sugar in the manufacture of articles of a wholly different description, such as confectionery, preserves or pastry, or such as one which should exempt the farmer who devoted his corn or rye to the making of whiskey, while other manufacturers of these articles were subjected to a tax. A somewhat different question might arise in such case, since none of these articles are the natural products of the farm—such products only becoming useful by being commingled with other ingredients. Refined sugar, however, is the natural and ultimate product of the cane, and the various steps taken to perfect such product are but incident to the original growth.

With reference to the analogous right of importation, it was said by this court at an early day in *Brown* v. *Maryland,* 12 Wheat. 419, that the right to sell was an incident to the right to import foreign goods, and that a license tax upon the sale of imported goods, while still in the hands of the importer in

their original packages, was in conflict with that provision of
the Constitution which prohibits a State from laying an impost
or duty upon imports.

Congress, too, has repeatedly acted upon the principle of the
Louisiana statute.   Thus, after having imposed by act of Au-
gust 2, 1813, a license tax upon the retailers of wines and spir-
its, for the purpose of providing for the expense of the war
with Great Britain, it was further enacted by an act of Febru-
ary 8, 1815, c. 40, 3 Stat. 205, that it should not be construed
"to extend to vine dressers who sell at the place where the
same is made, wine of their own growth, nor shall any vine
dresser for vending solely where the same is made, wine of his
own growth, be compelled to take out a license as a retailer of
wines."   So, too, in the Internal Revenue Act of July 1, 1862,
c. 119, 12 Stat. 432, a license tax was imposed (sec. 64) upon
retail dealers in all goods, wares and merchandise, but with a
proviso, in section 66, that the act should not be construed "to
require a license for the sale of goods, wares and merchandise
made or produced and sold by the manufacturer or producer
at the manufactory or place where the same is made or pro-
duced; to vinters who sell, at the place where the same is
made, wine of their own growth; nor to apothecaries, as to
wines or spirituous liquors which they use exclusively in the
preparation or making of medicines for lame, sick or diseased
persons."   Another paragraph of the same section (64) exempts
distillers, who sell the products of their own stills, from a tax
as wholesale dealers in liquors.   While no question of the power
of Congress is involved, these instances show that its general
policy does not differ from that of the act in question, and that
the discrimination is based upon reasonable grounds.

So, too, this court has had repeated occasion to sustain dis-
criminations founded upon reasons much more obscure than
this.   Thus in *Railroad Company* v. *Richmond*, 96 U. S. 521,
a municipal ordinance was sustained declaring that no car or
vehicle of any kind "belonging to or used by the Richmond,
Fredericksburg and Potomac Railroad Company shall be drawn
or propelled by steam" upon a certain street, although no
other company was named in the ordinance, the court held

that as no other corporation had the right to run locomotives in that street, no other corporation could be in a like situation, and that the ordinance, while apparently limited in its operation, was general in its effect, as it applied to all who could do what was prohibited. "All laws should be general in their operation, and all places within the same city do not necessarily require the same local regulation. While locomotives may with very great propriety be excluded from one street, or even from one part of a street, it would be unreasonable to exclude them from all." In *Pembina Mining Co.* v. *Pennsylvania*, 125 U. S. 181, it was decided that the equal protection clause did not prohibit a State from requiring, for the admission within its limits of a corporation of another State, such conditions as it chooses, though in that case it exacted a license tax from such corporations, which it did not exact from corporations of its own creation. In *Missouri Railroad Co.* v. *Mackey*, 127 U. S. 205, it was said that this clause did not forbid special legislation, "and when legislation applies to particular bodies or associations, imposing upon them additional liabilities, it is not open to the objection that it denies to them the equal protection of the laws, if all persons brought under its influence are treated alike under the same conditions." To the same effect is *Walston* v. *Nevin*, 128 U. S. 578.

The power of taxation under this provision was fully considered in *Bell's Gap Railroad Co.* v. *Pennsylvania*, 134 U. S. 232, in which it was said not to have been intended to prevent a State from changing its system of taxation in all proper and reasonable ways. It may, if it chooses, exempt certain classes of property altogether; may impose different specific taxes upon different trades or professions; may vary the rates of excise upon various products; may tax real and personal estate in a different manner; may tax visible property only and not securities; may allow or not allow deductions for indebtedness. "All such regulations, and those of like character, so long as they proceed within reasonable limits and general usage, are within the discretion of the state legislature or the people of the State in framing their constitution." See also *Home*

*Insurance Company* v. *New York*, 134 U. S. 594; *St. Louis &c. Railway* v. *St. Paul*, 173 U. S. 404.

In *Pacific Express Company* v. *Seibert*, 142 U. S. 339, a state statute defining an express company to be such as carried on the business of transportation on contracts for hire with railroad or steamboat companies, did not invidiously discriminate against the express companies defined by it, by exempting other companies carrying express matter in vehicles of their own. This case is specially pertinent to the one under consideration. See also *Giozza* v. *Tiernan*, 148 U. S. 857; *Columbus Railroad* v. *Wright*, 151 U. S. 470; *Duncan* v. *Missouri*, 152 U. S. 377; *Western Union Telegraph Co.* v. *Indiana*, 165 U. S. 304; *Adams Express Co.* v. *Ohio State Auditor*, 165 U. S. 194.

The constitution of Louisiana classifies the refiners of sugar for the purpose of taxation into those who refine the products of their own plantations, and those who engage in a general refining business, and refine sugars purchased by themselves or put in their hands by others for that purpose, imposing a tax only upon the latter class. To entitle a party to the exemption it must appear (1) that he is a farmer or a planter; (2) that he grinds the cane as well as refines the sugar and molasses; (3) that he refines his own sugar and molasses, meaning thereby the product of his own plantation. Whether he may also refine the sugar of others may be open to question; although by its express terms the act does not apply to planters who granulate syrup for other planters during the rolling season. The discrimination is obviously intended as an encouragement to agriculture, and does not deny to persons and corporations engaged in a general refining business the equal protection of the laws.

The judgment of the Supreme Court of the State of Louisiana is

*Affirmed.*

MR. JUSTICE HARLAN concurred in the result.

MR. JUSTICE WHITE did not participate in the decision of this case.