JOHN LAING *v.* FRED L. FOX, *State Tax Commissioner*

(No. 7919)

Submitted May 10, 1934.   Decided June 15, 1934.

*Blue, Dayton & Campbell, Arthur S. Dayton* and *Wm. F. Blue,* for appellant.

*Homer A. Holt,* Attorney General, *Ira J. Partlow* and *W. Holt Wooddell,* Assistant Attorneys General, for appellee.

LITZ, JUDGE:

This is an appeal from a decree of the circuit court of Kanawha County, sustaining a demurrer to, and dismissing, the bill, in the suit of a taxpayer to enjoin the State Tax Commissioner from levying and collecting a privilege or gross income tax.

The statute [sub-section (i), section 2, chapter 33, Acts, First Extraordinary Session, 1933] under which the tax is sought to be levied and collected, follows: "Upon every person engaging or continuing within this state in any business, profession, trade, occupation or calling not included in the preceding subdivisions or any other provision of this act (but not including a person engaging or continuing in the business of horticulture, agriculture or grazing) there is likewise hereby levied and shall be collected, a tax equal to one per cent of the gross incomes of persons taxable under other subdivisions hereof not derived from the exercise of privileges taxable thereunder." A tax is imposed upon the privilege of engaging in specific business activities by other parts of the Act.

The bill discloses that plaintiff, during the year 1933, received income from (a) salary, (b) interest on loans, (c) rents and royalties, (d) profit on casual sales of stock, (e) dividends on corporate stock, and (f) income on gas sales; charges that subdivision (i) and related provisions of the Act are unconstitutional under (1) the Fourteenth Amendment to the Federal Constitution, (2) section 1, Article X, as amended, of the West Virginia Constitution, and (3) section 30, Article VI of the State Constitution; and alleges that subdivision (i) is not applicable to income received prior to its effective date, May 26, 1933, and that it does not apply to investment

receipts in the nature of interest, dividends, rentals, profits from casual sales of property and the like.

The exemption of income from horticulture, agriculture or grazing is the basis of the first and second constitutional objections.

### Constitutional Questions

1. Plaintiff contends that the statute, by reason of the exemption, discriminates in favor of a large class of citizens and denies to him the equal protection of the laws as guaranteed under the Fourteenth Amendment to the Federal Constitution. The state legislatures may, without violation of the Fourteenth Amendment, select and classify the subjects of taxation so long as they do so in observance of a reasonable consideration of difference or policy. In the recent chain store tax case (*Board of Tax Commissioners* v. *Jackson*, 283 U. S. 527, 51 S. Ct. 540, 75 L. Ed. 1248) involving the validity of an Indiana statute, imposing a graduated tax, based upon the number thereof, on stores or mercantile establishments, under a single ownership and management, the Supreme Court of the United States, speaking through Mr. Justice Roberts, stated the rule as follows: "The principles which govern the decision of this cause are well settled. The power of taxation is fundamental to the very existence of the government of the states. The restriction that it shall not be so exercised as to deny to any the equal protection of the laws does not compel the adoption of an iron rule of equal taxation, nor prevent variety or differences in taxation, or discretion in the selection of subjects, or the classification for taxation of properties, businesses, trades, callings, or occupations. *Bell's Gap R. R.* v. *Pennsylvania*, 134 U. S. 232, 33 L. Ed. 892, 10 S. Ct. 533; *Southwestern Oil Co.* v. *Texas*, 217 U. S. 114, 54 L. Ed. 688, 30 S. Ct. 496; *Brown-Forman Co.* v. *Kentucky*, 217 U. S. 563, 54 L. Ed. 883, 30 S. Ct. 578. The fact that a statute discriminates in favor of a certain class does not make it arbitrary, if the discrimination is founded upon a reasonable distinction, *American Sugar Ref. Co.* v.

*Louisiana,* 179 U. S. 89, 45 L. Ed. 102, 21 S. Ct. 43, or if any state of facts reasonably can be conceived to sustain it. *Rast* v. *Van Deman & L. Co.,* 240 U. S. 342, 60 L. Ed. 679, L. R. A. 1917A, 421, 36 S. Ct. 370, Ann. Cas. 1917B, 455; *Quong Wing* v. *Kirkendall,* 223 U. S. 59, 56 L. Ed. 350, 32 S. Ct. 192. As was said in *Brown-Forman Co.* v. *Kentucky, supra,* (217 U. S. 563, 54 L. Ed. 883, 30 S. Ct. 578) : 'A very wide discretion must be conceded to the legislative power of the state in the classification of trades, callings, businesses or occupations which may be subjected to special forms of regulation or taxation through an excise or license tax. If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law.' It is not the function of this court in cases like the present to consider the propriety or justness of the tax, to seek for the motives or to criticize the public policy which prompted the adoption of the legislation. Our duty is to sustain the classification adopted by the legislature if there are substantial differences between the occupations separately classified. Such differences need not be great. The past decisions of the court make this abundantly clear." A similar observation was made by this court in *Hope Natural Gas Company* v. *Hall,* 102 W. Va. 272, 277, 135 S. E. 582, 583, sustaining a tax on the privilege of engaging "in mining and producing for sale, profit, or use, any coal, oil, natural gas, limestone, sand or other mineral product, or felling and producing timber for sale, profit or use." Judge Hatcher, writing the opinion of the court, said : "In *Bell's Gap R. R. Co.* v. *Penn.,* 134 U. S. 232, the same contention that plaintiff now advances here was made against the validity of a Pennsylvania taxation Act. But the Supreme Court held: 'The provision in the XIV Amendment, that no state shall deny to any person within its jurisdiction the equal protection of the laws, was not intended to prevent a State from adjusting its system of taxation in all proper and reasonable ways. * * * It may impose different specific taxes upon different trades and professions, and may vary the rates of excise

upon various products, it may tax real estate and personal property in a different manner; it may tax visible property only, and not tax securities for payment of money: it may allow deductions for indebtedness, or not allow them. All such regulations, and those of like character, so long as they proceed within reasonable limits, and general usage, are within the discretion of the State Legislature, or the people of the state in framing their Constitution. * * * We think that we are safe in saying that the XIV Amendment was not intended to compel the states to adopt an iron rule of equal taxation.' This doctrine has been repeatedly affirmed. *Express Co.* v. *Seibert*, 142 U. S. 339; *Clark* v. *Titusville*, 184 U. S. 329; *Armour Packing Co.* v. *Lacy*, 200 U. S. 226; *Citizens Tel. Co.* v. *Fuller*, 229 U. S. 322; *Mich. Cent. Ry. Co.* v. *Powers*, 201 U. S. 245; *Heisler* v. *Thomas Col. Co.*, 260 U. S. 245. 'The selection of all who are engaged within the state in mining ore or producing ores on their own account * * * as the subjects of an occupation tax is permissible.' *Oliver Iron Co.* v. *Lord*, 262 U. S. 172." In *Singer Sewing Machine Co.* v. *Brickell*, 233 U. S. 304, 34 S. Ct. 493, 58 L. Ed. 974, the Supreme Court upheld an Alabama statute taxing every person, firm or corporation selling or delivering sewing machines in person or through agents and exempting merchants selling sewing machines at their regularly established places of business. In the opinion it is stated, as a basis of the decision: "* * * there is an evident difference, in the mode of doing business, between the local tradesmen and the itinerant dealer, and we are unable to say that the distinction made between them for the purposes of taxation is arbitrarily made. In such matters, the states necessarily enjoy a wide range of discretion, and it would require a clear case to justify the courts in striking down a law that is uniformly applicable to all persons pursuing a given occupation on the ground that persons engaged in other occupations more or less like it ought to be similarly taxed." *Armour & Company* v. *Virginia*, 246 U. S. 1, 38 S. Ct. 267, 62 L. Ed. 547, involved a Virginia statute requir-

ing a tax on merchants doing business in the state based on the amount of their purchases during the license period, including as purchases all goods and merchandise manufactured by the licensee and sold or offered for sale in the state. The statute excluded from its operation domestic manufacturers, taxed on capital, offering for sale at the place of manufacture goods and merchandise manufactured by them. In upholding the statute, the Supreme Court said: "In the first place, we are of opinion that the distinction upon which the classification in the statute rests between a manufacturer selling goods by him made at their place of manufacture and one engaged as a merchant in whole or in part in selling goods of his manufacture at a place of business other than where they were made is so obvious as to require nothing but a mere statement of the two classes."

Plaintiff contends that the statute imposes a tax on all persons engaged in any form of business activity as a class, and that the farmer is therefore excepted not as a class but as part of a class. Whether farmers be treated as a class or as a part of a class, we believe the exception rests upon a reasonable basis of distinction or difference. The farmer not only produces commodities indispensable to human existence, but must trust to luck in the fluctuation of prices and the succession of unpredictable weather conditions. Realizing the plight of the farmer under existing economic uncertainties, the Federal Government in an effort to aid him, has gone to the extent of levying processing taxes, chargeable to the consumer, for his benefit. The people of the state have clearly indicated in the constitutional tax amendment the necessity of adjusting their system of taxation in respect to farming by authorizing the exemption of "the personal property, including live stock, employed exclusively in agriculture * * * and the products of agriculture * * * while owned by the producers" and limiting to fifty cents on each one hundred dollars value the rate of levy on "personal property employed exclusively in agriculture, * * * including horticulture and grazing, and products of agriculture while owned by the producer". It is argued that as approxi-

mately one-half of the male population of the state is engaged in farming, the exemption will result in the loss of a large amount of revenue. According to available statistics, the revenue, which, but for the exemption, would have been derived from agriculture, horticulture and grazing is relatively small as compared with the revenue from other sources under the statute. The income from farming in this state, according to the capital invested and service employed, is doubtless less than that realized from any other productive enterprise, and many of the farmers must intermittently pursue other employment in order to earn a livelihood. West Virginia is an industrial state, primarily engaged in mining and manufacturing. In *Moore* v. *State Board of Charities,* 40 S. W. (2d) 349, the court of Appeals of Kentucky, by a unanimous decision, upheld a statute requiring all retail merchants (except those actually engaged in gardening or farming and selling garden or farm products raised by them in the state), to pay a privilege tax on gross sales. Referring to the contention that the exemption was an arbitrary discrimination in favor of a class, the court treated the point of little moment by saying: "We did not, in that part of this opinion dealing with the equal protection of the laws, discuss the exemption of farmers and gardeners from the operation of the act because it is settled that a classification such as this is valid. Thus in *Potter* v. *Dark Tobacco Growers' Co-operative Association,* 201 Ky. 441, 257 S. W. 33, 35, we said: 'The basis of this change in public opinion toward combination and classification is not in any sense political, but economic, rather, and, in our judgment, it is because of basic economic conditions, affecting vitally not only the farmers, but also the public weal, that the classification based upon agricultural pursuits is reasonable, just, and imperative for the good of the entire nation and every citizen thereof.' " In *State ex rel. Stiner* v. *Yelle,* 25 Pac. (2d) 91, the Supreme Court of Washington, by a divided opinion, sustained a statute taxing all persons (except those employed in agriculture or in rendering services) for the privilege of engaging in business activities. In the majority

opinion, it is stated: "After an exhaustive study of the cases we are well satisfied that this is not a property tax even under the broad and all-inclusive terms of our Constitution. To hold otherwise would render it exceedingly difficult if not impossible to sustain any excise tax. It is true that the Constitution defines property as anything subject to ownership, and, in a sense, one's business and its earnings are owned by him, but the privilege of engaging in business and gainful pursuits under the protection of our laws is something which must and does exist before the business can be established and something far and away beyond and above the mere ownership of a business. Man in a state of nature gained his sustenance by his strength or cunning, or both, and that which he so gained might, and no doubt often was, taken from him before he could use and enjoy it by some one stronger and more cunning. Hence the established state enacted laws for the protection of human rights, the rights of property and to prevent the weak or the credulous from becoming the helpless victims of the force or fraud of the strong and the cunning. Peace officers and courts, among many other things, were established to this end and every citizen is now measurably safe in pursuing any gainful occupation with the expectation that he will be by the state fully protected and made secure in his property investment, and also in his gains therefrom. This is the privilege, far above mere property, which it is now sought to tax to the end that it may pay in some parts its fair share of the cost to the state of its creation and continuance. Income may be acquired, but only in exceptional cases, such as annuities and the like, is it susceptible of ownership. When acquired, income immediately becomes property in the hands of the acquirer, and it is, of course, taxable with other property of the same class. This act does not concern itself with income which has been acquired, but only with the privilege of acquiring, and that the amount of the tax is measured by the amount of the income in no way affects the purpose of the act or the principle involved. Among other authorities bearing upon the question, which support our view, we refer

280

only to the following few: *Southern Railway Co.* v. *Watts,* 260 U. S. 519, 43 S. Ct. 192, 67 L. Ed. 375; *Lawrence* v. *State Tax Commission,* 286 U. S. 276, 52 S. Ct. 556, 76 L. Ed. 1102; and our own cases of *Pacific Telephone & Telegraph Co.* v. *Seattle,* (Wash.) 21 P. (2d) 721; *Puget Sound Power & Light Co.* v. *Seattle,* (Wash.) 21 P. (2d) 727; *Town of Bucoda* v. *Swaney,* 163 Wash. 43, 299 P. 652; *Town of Sumner* v. *Ward,* 126 Wash. 75, 217 P. 502; and prior cases therein cited. These seem sufficient to decisively determine that we are now dealing with an excise tax and not with a tax on property. This being an excise tax, the Legislature, under the Fourteenth Amendment to our State Constitution, has very broad power, and we cannot interfere with that power except for arbitrary action, clear abuse, or constructive fraud appearing on the face of the act or from facts of which we may take judicial knowledge." In *Winter* v. *Barrett,* 186 N. E. 113, 89 A. L. R. 1398, the Supreme Court of Illinois, by a divided decision, invalidated a statute taxing the privilege of selling tangible personal property at retail; excepting farm products and farm produce sold by the producer thereof. The reasoning of the majority follows: "It may be conceded that the right to sell is an incident to the right to manufacture or produce, and, where the producer of farm products or produce engages in the business of selling at retail, but so sells only as an incident to his business of producing, it cannot be said that he is within the class to which this act applies, and therefore the uniformity provisions of the Constitution do not require that he be taxed for such sales. This act has declared, in effect, that such producer does not belong to that class no matter how he sells such products or produce. The sales of farm products generally are not to the consumer, and therefore do not come into competition with those engaged in the business of selling such commodities at retail. The occasional sale of farm products or produce at retail by the producer to the consumer, or such sales of the surplus of his produce raised for his own use, cannot be said to put such producer into the business of selling such property at retail to the con-

sumer. Many such producers do not engage in the business of selling to the consumer, but sell generally to grain or produce merchants, and cannot be classed with those in the business of selling tangible personal property at retail, for such is not their business. It is different, however, with the producer of farm products and produce, such as vegetables and the like, who not only conducts the business of producing such produce, of which sales generally may be an incident, but who also conducts the business of selling his produce only to consumers at retail. It is a matter of common knowledge that there are many so engaged. He thus conducts the separate business of selling at retail in competition with other retail dealers in such commodities. He is in the business of selling tangible personal property at retail in addition to the business of producing, and the exclusion of such business from the operation of the act, under such circumstances, finds no basis in fact upon which he may be reasonably placed in a different classification from the general class of those engaged in the selling of tangible personal property at retail created by the act. He is of the class to which the act applied, just as the druggist who compounds and produces the proprietary remedies which he sells at retail is in that class, and, so far as the act attempts to exclude him from its provisions, it is not uniform in its application to the class on which it operates and cannot be sustained." The minority, championing the right of the legislature to exempt from the operation of the statute farm products and farm produce, said: "In *Davis* v. *Mayor and Council of Macon*, 64 Ga. 128, 37 Am. Rep. 60, the Supreme Court of Georgia had under consideration the validity of an ordinance which provided: 'Each person or firm (farmers selling their own produce excepted) retailing fresh or butcher's meat in the city, whether from stalls, stores, or by peddling the same on the streets, shall pay a license of $50.' The court held that the tax was an occupation tax, and that the exemption of the farmer selling his own product did not make the ordinance invalid,

because 'the disposition of meat as the immediate sequel to rearing animals upon a farm is obviously no separate calling from that of farming.' The court in that case said: 'The ordinance is further attacked as invalid because it has an exception in it exempting from its operation farmers selling their own produce. The exception would probably have been implied had it not been expressed, for the tax imposed is a business tax, a tax on avocation or calling. The business of a farmer is production, not trade, and the sale directly by himself of what he rears or produces is merely occasional or incidental. * * * The constitutional requirement that "all taxation shall be uniform upon the same class of subjects," is not infringed by the ordinance in the provision which we are considering. The producer whose trade is incident to production, and the middleman whose trade is intermediary between the producer and the consumer, belong not to the same class, but to different classes of subjects in a scheme of taxation. At least, the difference is wide enough to justify, if not to compel, its recognition in shaping the scheme.' In *American Sugar Refining Co. v. Louisiana,* 179 U. S. 89, 21 S. Ct. 43, 44, 45 L. Ed. 102, the Supreme Court of the United States had under consideration a statute of the state of Louisiana imposing a tax on the business of refining sugar and molasses, based on the gross annual receipts of persons and corporations engaged in that business. The statute provided that it should not apply to planters and farmers grinding and refining their own sugar and molasses or to planters who granulate syrup for other planters during the rolling season. It was held that the exemption was valid, and that the act did not deny to persons and corporations engaged in a general refining business the equal protection of the laws. The court said: 'The act in question does undoubtedly discriminate in favor of a certain class of refiners, but this discrimination, if founded upon a reasonable distinction in principle, is valid. Of course, if such discrimination were purely arbitrary, oppressive, or capricious, and made to depend upon differences of color, race, nativity, religious opinions, political affiliations, or

other considerations having no possible connection with the duties of citizens as taxpayers, such exemption would be pure favoritism, and a denial of the equal protection of the laws of the less favored classes. But from time out of mind it has been the policy of this government, not only to classify for purposes of taxation but exempt producers from the taxation of the methods employed by them to put their products upon the market.' The tax imposed by the act .we are considering is upon retailers, and the farmer, when selling his produce, is not, strictly speaking, engaging in the business of retailing, but is engaged in an incidental part of his business of farming or producing. The exemption, as to him, does not render the act objectionable on the ground that it is not uniform as to the class upon which it operates."

2. Does the exemption violate the tax amendment to the Constitution wherein it provides that "the legislature shall have authority to tax privileges, franchises and incomes of persons and corporations and to classify and graduate tax on all incomes according to the amount thereof, and to exempt from taxation incomes below a minimum to be fixed from time to time"? It is urged by counsel for plaintiff that as the amendment confers upon the legislature authority only to classify and graduate tax on incomes, it is without power to classify privileges and franchises. A sufficient answer to this contention is that the legislature is inherently vested with plenary powers in the absence of explicit constitutional inhibition. "Whether the legislature has a certain power (not directly withdrawn) is not to be decided simply by marshalling the reasons for and against and then determining on which side is the weight of argument. The negation of the power must be manifest beyond reasonable doubt." *State Road Commission* v. *County Court of Kanawha County,* 112 W. Va. 98, 163 S. E. 815, 817.

3. It is further contended that the purpose of the Act is not stated in the title thereof as required by section 30, Article VI of the State Constitution. The first part of the title provides for the repeal of sections 1 to 17, inclusive, article 13, chapter 11, Code 1931, and the enactment

in lieu thereof of sections 1 to 23, inclusive. The sections repealed pertain to business and occupational taxes, as disclosed by the title to the original act. As the sections substituted are, in our opinion, germane to and consistent with the title of the repealed sections, the title to the Act under consideration, as applied to sub-section (i), seems sufficiently comprehensive to meet the constitutional requirement. "If the provisions of an amendatory act are germane to the purpose expressed in·the title of the original act and not inconsistent therewith, section 30, Article VI of the Constitution, will be satisfied by reference thereto in the title of the amendatory act." *State* v. *Furr*, 101 W. Va. 178, 132 S. E. 504. "Where the title of an original act sufficiently expresses its purpose in the manner required by the constitution, an act amendatory thereof or to be substituted therefor, if its provisions are germane to the purpose expressed in the title of the original and not inconsistent therewith, may, by its title, simply refer to the section of the original act which it is intended to amend, and this will be sufficient compliance with section 30 of Article VI of the Constitution." *Hood* v. *City of Wheeling*, 85 W. Va. 578, 102. S. E. 259.

## INTERPRETATIVE QUESTIONS

A.   The taxpayer asserts that the statute is operative only from its effective date, May 26, 1933. It is conceded that a legislative enactment will not be applied retroactively unless expressly or impliedly required by its language. The attorney general insists that various provisions of the Act clearly indicate that the tax is effective from the beginning of the calendar year, 1933. Section 2 provides: "There is hereby levied and shall be collected *annual* privilege taxes against the persons, on account of the business and other activities, and in the amounts to be determined by the application of rates against values or gross income, as follows: * * *." Various business activities on which the tax is imposed are then specified in sub-sections preceding sub-division (i). In section 1,

the "tax year", or "taxable year" is defined as "either the calendar year or the taxpayer's fiscal year when permission is obtained from the tax commissioner to use same as the tax period in lieu of the calendar year." Section 9 declares: "The assessment of taxes herein made and the returns required therefor shall be for *the year ending on the thirty-first day of December.*" Section 10 reads: "The tax imposed by this article shall be in addition to all other licenses and taxes levied by law as a condition precedent to engaging in any business, trade or calling. A person exercising a privilege taxable under this article, subject to the payment of all licenses and charges which are condition precedent to exercising the privilege taxed, may exercise the privilege for the *current tax year* upon the condition that he shall pay the tax accruing under this article." *Turkey Knob Coal Company* v. *Hallanan*, 84 W. Va. 402, 99 S. E. 849, involved a statute enacted March 21, 1919, and effective from passage, requiring corporations to pay a net income tax for the fiscal year 1919, and succeeding years. It was held that the tax should be levied for the fiscal year beginning July 1, 1918, and succeeding years. A consideration of the entire act in question impels the conclusion that the tax is effective from the beginning of the calendar year 1933. We do not think that a retroactive application will violate the due process clause of the State and Federal Constitutions, as contended by counsel for plaintiff, because the tax is levied upon the gross and not the net income of the taxpayer. In *Continental Oil Company* v. *Walker*, 285 Fed. 729, the United States Circuit Court of Appeals for the Ninth Circuit, considered a Montana statute effective March 5, 1921, providing that every dealer in gasoline and distillate "shall for the year 1921, and each year thereafter when engaged in such business in this state, pay to the state treasurer * * * a license tax for engaging in such business in this state; equal to one cent for each gallon * * * sold or distributed by such dealer in this state during each year." It was ruled that the application of the tax to sales for the year 1921 prior to the effective

date of the statute did not violate the equal protection clause of the Federal Constitution. "On general principles and irrespective of explicit constitutional limitations, a statute imposing an income tax may subject to taxation the income of the citizen for the whole of the current year in which the statute is passed, that is, not only so much of the income as accrued from the date of the enactment of the law to the end of the year, but also that portion which accrued or was earned from the beginning of the year to the date of the law. For the year's income is treated and considered as one entire thing, not as made up of several portions or items. And hence, although the statute might be called retrospective in its operation upon a part of the first year's income, it is not retrospective in such a sense as to render it unconstitutional." Black on Income Taxes, section 212. See in accord: Cooley, Taxation, sections 135 and 1751; Cooley's Constitutional Limitations, page 541.

B. We reject the theory of plaintiff that income from loans and investments is not an income of a "business, profession, trade, occupation or calling" within the meaning of the statute, which provides that "business", as used therein, "shall include all activities engaged in or caused to be engaged in with the object of gain or economic benefit either direct or indirect." The lending or investing of money requires of one so engaged active and discriminate judgment.

The ruling of the circuit court is, therefore, affirmed.

*Affirmed.*