**PREMIER–PABST SALES CORPORATION v. GROSSCUP et al.**

No. 8953.

District Court, E. D. Pennsylvania.

Dec. 10, 1935.

Charles S. Wesley and Wesley, Wagoner, Troutman & McWilliams, all of Philadelphia, Pa., for plaintiff.

Horace A. Segelbaum and Thomas I. Guerin, Sp. Deputy Attys. Gen., Edward Friedman, and Grover C. Ladner, Deputy

Attys. Gen., and Charles J. Margiotti, Atty. Gen., for defendants.

Before THOMPSON, Circuit Judge, and DICKINSON and KIRKPATRICK, District Judges.

DICKINSON, District Judge.

The Webb-Kenyon Act (27 U.S.C.A. § 122), confirmed by the Twenty-First Amendment, forbids the importation of intoxicating liquors into any state in violation of the laws thereof. The plaintiff claims the right to do this forbidden thing and asks a court of equity to declare and enforce it. Does the right exist? It is argued that it does here because the Pennsylvania Act (47 P.S.Pa. § 744—1 et seq.) is in conflict with two provisions of the Constitution of the United States and hence unconstitutional.

1. Clause 3 of section 8 of article 1, known as the commerce clause, and

2. Section 2 of article 4 and section 1 of the Fourteenth Amendment, known as the due process, equal rights, and equal protection of the law, clauses.

### The Commerce Clause.

■ It is one of the unique features of the American scheme of government that we are citizens of the United States and likewise citizens of the state in which we reside, and, as such citizens, we owe allegiance to the United States and obedience to its laws, while at the same time we also owe allegiance to our state and obedience to its laws. It might be said that such a plan would prove unworkable because a conflict would be inevitable. All danger of conflict is, however, avoided by a very simple expedient. The United States and each of the states have by the Constitution agreed what sovereign powers shall be exercised by the United States and which surrendered by the states, and have further agreed that the courts shall determine the limits of the powers so committed and so surrendered. The commerce clause provides us with an illustration. Each state as a sovereign state had full dominion and control over imports. It was, however, agreed that no state should exercise this power, but that it shall be wholly committed to the United States. A practical result has been that we have as free commercial intercourse within the United States as within each state. This has proven to be an inestimable blessing. A legal consequence was that the states surrendered the exercise of all control over imports and interstate commerce and such control was committed to the United States alone. We have been supplied with abundant authority for this proposition. There is no need to discuss the citations. It further follows that without a law of the United States to support it, no state could of itself do what the state of Pennsylvania has undertaken to do in the instant case. Some subjects of commerce, however, may be regarded by the people of a state as evils. Intoxicating liquor is by some so regarded. Any article of import when brought into a state becomes commingled with commodities within the state which are the subject of intrastate trade and subject to the regulation of sale and use. Admission into the state could not, under the commerce clause, be denied, but the state had the power to control it after it came into the state. This raised the question of when the United States control ended and that of the state could be exercised. The courts answered the question of applying "the original package" doctrine. The states found their laws, passed to control the traffic in intoxicating liquors, overborne by the flood of imported liquors. There was because of this a persistent knocking at the doors of Congress demanding relief. Congress long resisted the appeal, but after a time so far relented as to pass the Wilson bill. This was in terms directed at "the original package" doctrine. It provided that the line of scrimmage between the interstate commerce laws and those of the state should be drawn when and where the imported liquors reached and were delivered to the consignee and were not as theretofore to retain their status of interstate shipments as long as they remained "in the original package." As soon as the import passed this new line, the state laws became operative. The Wilson Act (27 U.S.C.A. § 121), however, was not found to be effective and was followed by the Webb-Kenyon Act (27 U.S.C.A. § 122), the Reed Amendment (27 U.S.C.A. § 123 and note), and, finally, by the Twenty-First Amendment. As the law now is, the measure of control which the states may exercise is determined by the states themselves. If the importation of intoxicating liquor is acceptable to a state, it retains its status as the legitimate subject of interstate commerce, but if it is forbidden importation by the state, the laws of the United States likewise forbid it. Inter-

state commerce is spoken of under the figure of a stream whose free flow cannot be interrupted by any state law. Any state may, however, remove intoxicating liquor as a subject of interstate commerce. When it does so by passing a law on the subject of its importation, the law of the United States forbids its further importation if in violation of the laws of the state. Such is now the law and that the law was once otherwise goes for naught.

The proposition urged upon us that the law of a state which conflicts with the Constitution of the United States is a nullity is sound enough, but the plaintiff is asking to have nullified a provision of the very Constitution to which it appeals.

Under the Twenty-First Amendment when a state passes a law upon the subject of the importation of intoxicating liquors all importation in violation of that law is forbidden by the Constitution and laws of the United States. The state of Pennsylvania has passed such a law and all imports of intoxicating liquors in violation of that law are forbidden. It further follows that the commerce clause avails the plaintiff nothing.

### Due Process and Equal Protection.

The argument addressed to us seems to concede that if a state prohibited absolutely all sales of alcoholic liquors, no imports of it would be lawful. If, however, the state permitted sales by its own citizens, no matter how restricted, it could not deny to sellers outside the state an equal right to the like privilege. The thought is presented in the figure of a truck loaded with intoxicating liquor reaching a state line where it is confronted by a gate barrier and a state warden who denies admission. The driver sees on the inside of the line intoxicating liquors being used and dealt in. Because of this, he asserts an equal right and proposes to crash the gate. The question, however, is not one of his right to enter, but to give entrance to the intoxicating liquor. Such entrance is forbidden by the state law and when so forbidden is, as we have said, barred also by the Twenty-First Amendment. There is no partiality in such a law.

There is moreover an overstatement in the distinction drawn between prohibition and regulation of the liquor traffic. There is undoubtedly such a distinction. The Reed Amendment (27 U.S.C.A. § 123 and note) recognizes it and is built upon it. Words, however, always have an historical meaning. We speak of prohibition of the traffic in alcoholic liquors. In strictness there has never been such a prohibition and in the nature of things can never be. Prohibition is never absolute, but qualified as in its sale and use for beverage purposes. On the other hand, all regulating laws are prohibition laws. Sales may be prohibited except by a licensed few; they may be prohibited otherwise than at designated places or in a prescribed form or they may be prohibited for use as a beverage. There is prohibition in all. The difference is one of degree. There is, however, a recognized distinction. Prohibition of all sales of alcohol for use as a beverage we call prohibition. The other modified forms of prohibition we call regulation of the traffic. Importation, on the other hand, is an act. The test of its legality is by the Webb-Kenyon Act (27 U.S.C.A. § 122) and by the Twenty-First Amendment made the law of the importing state. It might have made the test that applied by the Reed Bill—the law of a prohibition state. It was, however, made otherwise—whether the import would be in violation of any law of the state of importation. This test is a constitutional provision. Such provisions, if conflicting, are subject to the rule applied to conflicting statutes. The latest controls. The provisions of the original Constitution, as of the earlier amendments, must give way to the later. Moreover, without the Twenty-First Amendment the Pennsylvania Act would not have infringed any constitutional provision with the Webb-Kenyon Act in force. All the commerce clause does is to commit the control of imports to Congress. What Congress permits is not unconstitutional. Some of the provisions of the Pennsylvania Act do undoubtedly discriminate in favor of the citizens of the state. The traffic in intoxicating liquors is universally known to be loaded with danger to the public weal. It may be subjected to the most stringent regulation. Licenses to sell to the ultimate consumer may be limited to those who in the conduct of the business can be brought under control and supervision. The traffic is one emphatically "fraught with a public interest." No one can claim "the right and privilege" to do harm to others. The regulation of the traffic by state laws, in the attempt to minimize the evils attending it, is no infringement of the rights of any one. It is no denial of any of "the privileges and im-

munities" of citizens of the United States. DeGrazier v. Stephens, 101 Tex. 194, 105 S.W. 992, 16 L.R.A.(N.S.) 1033, 16 Ann. Cas. 1059; In re Irish, 121 Kan. 72, 250 P. 1056, 61 A.L.R. 337, and cases cited in notes.

█ That the effect of some of the regulations may be to favor domestic products or citizens of the state does not in itself render a state law obnoxious to the provisions of the Fourteenth Amendment. Cox v. Texas, 202 U.S. 446, 26 S.Ct. 671, 50 L. Ed. 1099; Brown-Forman Co. v. Commonwealth of Kentucky, 217 U.S. 563, 30 S.Ct. 578, 54 L.Ed. 883; Liberty Warehouse Co. v. Burley Tobacco Growers' Co-op. Marketing Ass'n, 276 U.S. 71, 48 S.Ct. 291, 72 L.Ed. 473; American Sugar Refining Co. v. Louisiana, 179 U.S. 89, 21 S.Ct. 43, 45 L.Ed. 102.

A very illuminating discussion of this feature may be found in the dissenting opinion in Liggett Co. v. Lee, 288 U.S. 517, 541, 53 S.Ct. 481, 77 L.Ed. 929, 85 A. L.R. 699.

The conclusions reached are:

1. The Pennsylvania Act is a constitutional exercise of the power of the state to legislate on the subject of the importation of intoxicating liquor into the state.

2. The right demanded by the plaintiff is the right to import beer into the state of Pennsylvania "in violation of the law" of the state. This right the Webb-Kenyon Act and the Twenty-First Amendment deny and the importation is forbidden.

3. The bill of the plaintiff should be dismissed, with costs, as wanting in equity.

### The California and Georgia Cases.

The like questions have been brought before other courts upon the rulings in which the plaintiff relies. A decent respect for the courts rendering these decisions calls for a statement of our reasons for reaching a different conclusion. The cases are Young's Market Company v. State Board, 12 F.Supp. 140, ruled by the District Court for the Southern District of California, a copy of the opinion in which has been supplied to us, and a like ruling by the court of the Georgia District, in which no opinion has been made public.

We are not advised of the provisions of the California statute (St.Cal. 1935, c. 330) and restrict ourselves to such expressions of the opinion as have application to the Pennsylvania Act. We accept, of course, the proposition that without the Wilson, Reed, and Webb-Kenyon Acts and the Twenty-First Amendment, any interruption of the free flow of beer into Pennsylvania in interstate commerce would be obnoxious to the commerce clause of the Constitution. No citation of authorities is needed to support this proposition. The opinion, however, so far as it applies to the instant case, is based upon a phrase in the Triner Corp. v. Arundel Case (D.C.) 11 F.Supp. 145, 147, to the effect that the Twenty-First Amendment does not withdraw intoxicating liquors as a subject of interstate commerce. The opinion hastens to add, however, that by it the states are "free to determine to what extent, if at all, intoxicating liquors" shall continue to be the lawful subject of such commerce. It may be that it is inaccurate to say that the Webb-Kenyon Act or the Twenty-First Amendment withdraws intoxicating liquor from the subjects of interstate commerce. Clearly neither does of itself because such liquors continue to be the subject of such commerce until the state has acted. As soon, however, as the importation is forbidden by a state law, the importation is forbidden by the Constitution and laws of the United States. In this respect intoxicating liquor is made an exception to other subjects of interstate commerce.

It is here that we find ourselves in disagreement with what we are asked to find in the opinion in the cited case. It is that any state law which interferes with the importation of intoxicating liquor into the state is in conflict with the commerce clause of the Constitution and hence a nullity.

We adhere to the view, before expressed, that if it cannot be imported without a violation of a law of the state, its importation is declared unlawful by the Webb-Kenyon Act and by the Twenty-First Amendment, and it is hence without the operation of the commerce clause.

The state statutes in the cited cases were held to be in conflict with the Fourteenth Amendment. We, of course, express no opinion as to this feature of those cases, but we hold that the Pennsylvania statute is not so in conflict.

In compliance with the Equity Rule formulated November 25, 1935 (rule 70½, as amended [28 U.S.C.A. following section 723]), we file herewith findings of fact and conclusions of law.

The bill before us prays for an injunction against the enforcement of the Pennsylvania statute and also asks for a declaratory judgment.

To give definiteness of date to the decree entered, none is now made, but the parties have leave to submit a formal decree in conformity with this opinion.

### Findings of Fact.

1. The facts are found as set forth in the stipulation of counsel.

### Conclusions of Law.

1. The beer, the claimed right to import which the plaintiff asks to have enforced, cannot be imported except in violation of the laws of Pennsylvania.

2. The statutes of the state, here in question, are constitutional.

3. The importation is unlawful under the Constitution and laws of the United States.

4. The bill of the plaintiff is without equity and should be dismissed, with costs.