**UNITED STATES of America**

v.

**Lawrence T. CARSON, Jr.**

**Crim. No. N–77–08.**

United States District Court,
D. Connecticut.

May 19, 1977.

Peter C. Dorsey, U. S. Atty., New Haven, Conn., Brian McDonald, Trial Atty., Crim. Section, Civ. Rights Div., Dept. of Justice, Washington, D. C., for plaintiff.

Hugh F. Keefe, Lynch, Traub, Keefe & Marlowe, New Haven, Conn., for defendant.

MEMORANDUM OF DECISION

ZAMPANO, District Judge.

In an indictment returned on January 13, 1977, defendant Carson, a state police officer, is accused of assaulting one Jerry D. McKinney, in violation of 18 U.S.C. § 242, which provides that no person acting under color of law may subject a citizen to a deprivation of any right, privilege or immunity secured or protected by the Constitution or laws of the United States.

A timely motion to dismiss the indictment was filed on the ground that the defendant is a victim of discrimination and selective prosecution by the government. Following oral arguments on the motion, evidentiary hearings were conducted for two days at which 12 witnesses testified.[1] Comprehensive briefs now having been filed, the matter is ripe for decision.

### I

It is undisputed that on November 27, 1975, at approximately 1:20 A.M., Carson was on duty as a Connecticut state trooper and was dispatched to the scene of a one-car accident in Haddam involving McKinney, an agent of the Federal Bureau of Investigation ("FBI"). It is further uncontroverted that, during the course of the investigation, Carson struck McKinney in the head, causing injuries which required his hospitalization.

The government contends that Carson first handcuffed the semi-conscious McKinney and then wilfully assaulted him in the face and head without justification. At the time, the government submits, McKinney was not intoxicated and in no way provoked Carson to pummel him. On the other hand, Carson claims that he acted in self-defense after McKinney, in a drunken and abusive manner, forcefully resisted being placed into custody.

### II

Carson argues that he was specially chosen for prosecution in the instant case because 1) the person injured is a member of the FBI, and 2) the government is attempting to cover up the misconduct of one of its agents.

Initially, in support of the motion to dismiss, counsel for the defendant in a detailed affidavit set forth an offer of proof asserting that numerous complaints of excessive force and brutality have been made against local police officers and state troopers in the State of Connecticut; that virtually all these complaints involved allegations of police misconduct that were more extreme than in the present case; and that with the exception of two cases, no federal prosecution was instituted. The affidavit particularized these general allegations by reference to statistical evidence obtained from the records of the Connecticut State Police, by specifying the factual circumstances of other incidents, and by hearsay reports received from various attorneys who have represented numerous complainants in so-called "police brutality" cases. Based on this preliminary showing, the defendant requested an evidentiary hearing to support his claim of selective and discriminatory treatment.

█ Since the defendant's moving papers made out at least a *prima facie* case of improper discrimination in enforcing the law, an evidentiary hearing was conducted. *United States v. Falk*, 479 F.2d 616, 623 (7 Cir. 1973) (*en banc*); cf. *United States v. Berrios*, 501 F.2d 1207, 1211–1212 (2 Cir. 1974). Several of the defendant's witnesses testified that numerous complaints relating to police misconduct, many of which involved more serious injuries than those inflicted upon McKinney, were referred to

---

1. The witnesses included 1) attorneys John Williams and Burton Weinstein, who have represented numerous plaintiffs in civil rights matters; 2) several police officials who testified to the number of complaints of police brutality in the large cities of this state; 3) John F. Conroy, Deputy Chief of the Criminal Section, Civil Rights Division of the Department of Justice; 4) Peter C. Dorsey, United States Attorney for the District of Connecticut; and 5) various officials and troopers of the Connecticut State Police Department. The defendant did not testify at the hearing before this Court.

the Department of Justice but that none of the offending officers were recommended for prosecution.[2] Testimony was also received concerning McKinney's behavior prior to the incident in question[3] and the results of the disciplinary hearing conducted by the State Police Department against Carson.[4] However, three eyewitnesses to the confrontation between Carson and McKinney were not called as witnesses.

John F. Conroy, a Deputy Chief of the Civil Rights Division of the Department of Justice, testified that in 1976 his staff handled approximately 3500 complaints relating to civil rights violations and that, of these, 16 were referred for grand jury action; that he, along with the line attorney assigned to the case and the Chief of the Division, authorized the prosecution against Carson; that the usual and customary procedures were followed in arriving at their decision; that the FBI merely submitted factual reports to the Department of Justice and played no role in the decision-making process; and that the considerations applied and weighed in arriving at the determination to prosecute Carson were the same as those utilized in every other case. The relevant considerations were enumerated as follows: 1) availability of witnesses in corroboration of the offense; 2) credibility of the victim; 3) evidence relating to motive or intent of the offender; 4) sanctions already imposed upon the offender by local action, such as suspension or dismissal of the police officer; 5) probability of vindication by a civil action instituted by the victim; and 6) seriousness of the injuries inflicted.

In addition to the testimonial evidence, the Court requested and received for an *in camera* inspection certain internal memoranda of the Department of Justice relating to this case, including the Prosecutive Summary which recommended prosecution.

## III

■ Controlling authorities have emphasized that traditionally prosecutors have broad discretion in the exercise of their powers to institute criminal charges, see, e. g., *Inmates of Attica Correctional Facility v. Rockefeller*, 477 F.2d 375, 379–380 (2 Cir. 1973), and that some intentional selectivity in the enforcement of the laws is permissible. *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962); *Moss v. Hornig*, 314 F.2d 89, 92 (2 Cir. 1963).

However, it has also been recognized that the use of arbitrary or unjustifiable standards in the prosecutorial decision is not acceptable. *Snowden v. Hughes*, 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1944); *United States v. Falk, supra*, 479 F.2d at 619; *United States v. Crowthers*, 456 F.2d 1074, 1080 (4 Cir. 1972). As was stated in the landmark case, *Yick Wo v. Hopkins*, 118 U.S. 356, at 373–374, 6 S.Ct. 1064, at 1073, 30 L.Ed. 220 (1886):

Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution.

■ In *United States v. Berrios, supra*, a leading case on selective prosecution, the Second Circuit set forth the two essential

**2.** Attorney John Williams testified that during the period 1971 to 1977, he handled approximately 50 cases for clients who were allegedly subjected to police misconduct; attorney Burton Weinstein stated he referred 20 cases of police brutality in the last seven years to the Department of Justice requesting prosecutions under § 242. See, e. g., *Arroyo v. Walsh*, 317 F.Supp. 869 (D.Conn.1970).

**3.** After playing cards and having some drinks at the home of friends, McKinney became in-

volved in a one-car accident and left the scene without notifying the police. A short time later, his automobile went off the road and the state police were notified. The incident in question occurred when Carson was dispatched to the scene to investigate this second accident.

**4.** Carson was exonerated of any improper conduct by the Internal Affairs Division of the Connecticut State Police Department.

elements which the defendant has the "heavy burden" of establishing, at least *prima facie*, in order to sustain a finding of prosecutorial misconduct: 1) that he has been intentionally singled out for prosecution; and 2) that the decision to prosecute was based upon an invidious or arbitrary standard such as race, religion, or the infringement of a fundamental right. Cf. *Two Guys v. McGinley,* 366 U.S. 582, 588, 81 S.Ct. 1135, 6 L.Ed.2d 551 (1961); *United States v. Berrigan,* 482 F.2d 171, 173–174 (3 Cir. 1973); *United States v. Steele,* 461 F.2d 1148, 1151 (9 Cir. 1972).

Most of the cases relating to selective enforcement of the law speak to the issue within the framework of the constitutional guarantee of equal protection which is considered binding upon federal action through the protections of the Fifth Amendment. See, e. g., *Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954); *Washington v. United States,* 130 U.S.App.D.C. 374, 401 F.2d 915, 922–923 (1968); cf. *United States v. Falk, supra* at 618; *United States v. Steele, supra* at 1151. Thus, the "unjust or illegal discrimination," condemned in *Yick Wo v. Hopkins, supra,* may result from decisions to prosecute that are "arbitrary, oppressive, or capricious, and are made to depend upon differences of color, race, nativity, religious opinions, political affiliations" and so forth. *American Sugar Ref. Co. v. Louisiana,* 179 U.S. 89, 92, 21 S.Ct. 43, 44, 45 L.Ed. 102 (1900).

In addition to the equal protection arguments advanced by the defendant in the instant case, it is also claimed that the prosecution was instituted in "bad faith." See, e. g., *United States v. Bourque,* 541 F.2d 290, 293 (1 Cir. 1976); *Shaw v. Garrison,* 467 F.2d 113, 114 (5 Cir.), cert. denied, 409 U.S. 1024, 93 S.Ct. 467, 34 L.Ed.2d 317 (1972); cf. *Allee v. Medrano,* 416 U.S. 802, 819, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974). ■ While selective prosecution and bad faith cases are in many respects factually similar, there are differences in these sepa-

rate defenses. In *Shaw v. Garrison, supra,* for example, the court stressed that the baseless prosecution was instituted for purposes of harassment and the prosecutor's personal financial gain, *Id.* at 116–120; equal protection principles did not provide the underpinnings for the decision. Thus, the quantum of proof against the defendant in a bad faith case is much more a decisive factor than in a selective prosecution case where the guilt of the defendant is generally recognized. *Compare Allee v. Medrano, supra,* 416 U.S. at 819, 94 S.Ct. at 2202 (Supreme Court remands case for findings "as to whether these particular prosecutions were brought in bad faith, with no genuine expectation of conviction") *with United States v. Falk, supra* at 619 (violation of selective service laws conceded).

IV

■ Applying these guiding principles of law to the facts in the case at bar, it is the opinion of the Court that the motion to dismiss must be denied for the following reasons.

■ First, the record does not support the allegation that the defendant has been singled out for prosecution for a violation of 18 U.S.C. § 242. Last year alone, 16 other persons were indicted under the same statute, including two defendants who were tried and convicted in this District.[5] Thus, while the statistics submitted into evidence reveal some selectivity in prosecutions, they, in and of themselves, do not establish that the defendant is a victim of a selective prosecution. Cf., e. g., *Moss v. Hornig, supra,* 314 F.2d at 93.

Second, no evidence was produced which indicated that the government commenced criminal process against the defendant based on any arbitrary, invidious or unjustifiable standard, such as race, religion, color, nativity, political affiliation or the desire to prevent his exercise of a constitutional right. Cf. *Oyler v. Boles, supra,* 368 U.S. at

---

5. *United States v. Joseph M. Procaccini and Gerardo Ramos,* Crim. No. N–76–70 (D.Conn. April 6, 1977).

456, 82 S.Ct. 501; *Snowden v. Hughes, supra*, 321 U.S. at 9–10, 64 S.Ct. 397; *United States v. Berrios, supra*, 501 F.2d at 1211.

Third, no unusual procedures were followed in the decision-making process to prosecute the defendant. Cf. *United States v. Falk, supra*, 479 F.2d at 622. The usual and customary internal administrative steps were pursued and the same criteria were applied by the prosecutors in handling the defendant's case as with every other similar case.

Fourth, there is not a scintilla of evidence to sustain the charge that the defendant's prosecution was motivated by bad faith, malice, or personal vindictiveness on the part of the prosecutors or the FBI. Cf. *Allee v. Medrano, supra*, 416 U.S. at 819, 94 S.Ct. 2191; *Shaw v. Garrison, supra*, 467 F.2d at 122. Indeed, the proceedings before this Court disclosed that the determination to proceed against the defendant was reached only after a thorough investigation by the FBI and careful and conscientious weighing of the pertinent factors by responsible officials of the Department of Justice. The Court finds that the prosecutorial decision was the product of a reasoned policy, closely related to the legitimate objectives of the enforcement of § 242.

Finally, the evidence at the hearing and this Court's inspection of the Prosecutive Summary sustain the government's position that the decision to prosecute was based on lawful and responsible standards, free of any taint of purposeful discrimination due to the fact that the victim was an agent of the FBI.

The testimony of the attorneys for the government, Conroy and Dorsey, convincingly established that the applicable guidelines for prosecution, hereinbefore set forth, were applied fairly and rationally. From the government's view of the case, Carson under color of law committed an unprovoked, brutal assault upon McKinney who was in a helpless, dazed condition as a result of injuries suffered in an automobile accident. The State Police Department, in the government's opinion, failed to discipline Carson for conduct violative of state and federal laws. A critical distinguishing feature between the instant case and other cases which were not recommended for prosecution is the availability of two impartial witnesses to the assault who, according to the government, will present compelling, impartial testimony in support of the prosecution. Under these circumstances, it would appear that the prosecution of the defendant has been undertaken in good faith and clearly within the prosecutorial discretion of the government's attorneys.

Accordingly, the motion to dismiss is denied.