465 S.E.2d 862

**TSGP LIMITED PARTNERSHIP,**
**Plaintiff Below, Appellee,**

v.

**DEPARTMENT OF TAX AND REVENUE, Defendant Below, Appellant.**

No. 22814.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 20, 1995.

Decided Oct. 13, 1995.

---

Marc A. Monteleone, Bowles Rice McDavid Graff & Love, Charleston, for Appellee.

Stephen B. Stockton, Assistant Attorney General, Charleston, for Appellant.

WORKMAN, Justice:

The West Virginia Department of Tax and Revenue ("Appellant") appeals from an adverse ruling entered by the Circuit Court of Kanawha County on September 14, 1994, ordering the release of $530,164.36 plus accrued interest to Appellee TSGP Limited Partnership ("TSGP"). After reviewing the tax statute at issue, we find the circuit court's ruling to be erroneous and accordingly, we reverse.

TSGP operated Tri–State Greyhound Park from May 1985 through May 1989 pursuant to licensure from the West Virginia Racing Commission ("Commission"), a division of Appellant. In 1986 and 1987, individual TSGP partners lobbied the West Virginia Legislature ("Legislature") for an amendment to West Virginia Code § 19–23–9 (1984) that would permit licensees of the state's dog racing tracks [1] to receive increased commissions [2] from the wagering pools.[3] Studies performed by the Commission's Director of Audits indicated that the proposed increase in the licensees' commissions would result in less money being returned to bettors and consequentially, decreased wagering at the dog racing facilities. An estimated annual loss of pari-mutuel wagering tax revenue to the state of 1.25 million dollars was predicted to result if the licensees' commissions were increased pursuant to proposed statutory amendments.[4]

To protect the state from experiencing this estimated loss of tax revenues, an alternative minimum tax ("AMT") provision was inserted

---

1. Tri–State Greyhound Park and Wheeling Downs Greyhound Racing Association are the only dog track licensees in this state.

2. The amount of commissions which dog track licensees are permitted to deduct from the pari-mutuel pools is expressly set forth by statute. *See* W.Va.Code § 19–23–9(b)(3). Out of the authorized amount of commissions, the licensees are required to pay the pari-mutuel pools tax delineated in West Virginia Code § 19–23–10(d) (1993).

3. A "pool" is defined as "a combination of interests in a joint wagering enterprise or a stake in such enterprise." W.Va.Code § 19–23–3(20) (1993).

4. Since the pari-mutuel wagering tax is calculated on the amounts wagered, decreased wagering directly results in reduced amounts of pari-mutuel wagering tax being owed to the state.

in the bill which addressed the commission increase. The AMT provision ensured that the state would receive, at a minimum, the same amount of revenue from the dog racing tracks as it had received in 1986. Thus, in exchange for receiving an enhanced amount of commissions, the licensees would be subject to the requirement that:

> Notwithstanding the provisions of subsection (d), section ten of this article [§ 19–23–10–(d)], the amendments to this section by the Acts of the Legislature, Regular Session, one thousand nine hundred eighty-seven, shall not reduce any pari-mutuel wagering tax paid by any dog racing licensee below the total dollar level paid by such licensee for and during the calendar year one thousand nine hundred eighty-six: *Provided*, That nothing herein shall affect any increase in any such tax; and, *Provided, further*, That, if the number of annual dog racing meetings approved by the racing commission for any dog racing licensee is reduced below four hundred by the racing commission, or as a result of acts of God, including, but not limited to flood, fire, wind damage, work stoppages or other events beyond the control of the licensee, (but not including inclement weather), then any increase in the pari-mutuel wagering tax for any calendar year in excess of the total dollar level paid by such licensee for the calendar year one thousand nine hundred eighty-six, shall be reduced in like proportion.

Enr.H.B. 2367, Reg.Sess. (1987).

House Bill 2367, which amended West Virginia Code § 19–23–9 to permit increased commissions for the state's dog track licensees, was passed by the Legislature on March 14, 1987. Application of the AMT provision required that at the end of a tax year, each dog racing licensee would compare the dollar amount of pari-mutuel wagering tax it had paid that year to the amount paid in 1986. In the event the amount paid in a particular year was less than the amount paid in 1986, then the difference had to be remitted to the state pursuant to West Virginia Code § 19–23–9(b)(3) (1987).

Consistent with the Commission's studies, pari-mutuel wagering decreased at the state's dog-racing facilities following passage of House Bill 2367. Pursuant to the AMT provision included in West Virginia Code § 19–23–9(b)(3), TSGP paid additional pari-mutuel wagering taxes in the amounts of $201,673 for 1987[5] and $980,223 for 1988.

On April 8, 1989, the Legislature passed House Bill 2587, which amended and reenacted West Virginia Code § 19–23–9 without an AMT provision. House Bill 2587 provided that it was to be effective ninety days from the date of its passage. Accordingly, on July 7, 1989, the AMT provision was no longer in effect.

In determining the amount of taxes TSGP owed for 1989, the Commission determined that the AMT provision should still be applied for that portion of 1989 prior to the repeal of such provision. The Commission calculated the AMT owed for 1989 by comparing the amount of pari-mutuel tax paid by TSGP for the period January 1, 1989, through July 6, 1989, to the amount paid for the same period in 1986. Pursuant to this method, the Commission determined that TSGP owed additional tax under the AMT provision for 1989 in the amount of $501,878.74.

On October 4, 1989, TSGP received a letter from the Commission stating that TSGP owed additional pari-mutuel wagering tax for

---

**5.** For 1987, the first year of the AMT's existence, the Commission compared the total amount of pari-mutuel tax paid in all of 1986 to the total amount of pari-mutuel tax paid in all of 1987. The calculations were performed in this manner, notwithstanding the provision's enactment in March 1987, because the language of the AMT provision indicated that it was to be calculated on an annual basis. TSGP does not object to the amount of AMT paid in 1987, nor to the manner in which its AMT was calculated for 1987. Tax statutes are commonly applied for the entire year in which they were first enacted. *See Laing v. Fox*, 115 W.Va. 272, 286, 175 S.E. 354, 360, *appeal dismissed*, 293 U.S. 525, 55 S.Ct. 126, 79 L.Ed. 636 (1934) (recognizing that tax statute enacted on May 26, 1933, was effective from the beginning of the calendar year).

1989. TSGP took objection to the collection of the additional tax for 1989. Without waiving its objection to the AMT assessment for 1989, TSGP escrowed the amount of $530,-164.36 pending resolution of this issue.[6] TSGP requested an administrative hearing regarding the assessment of the AMT against it for 1989 on the grounds that the Commission lacked authority for assessing the AMT tax on a pro rata basis and that the AMT provision was unconstitutional.

The administrative law judge ("ALJ"), in its decision issued on June 22, 1993, concluded that the AMT provision was constitutionally valid and that the AMT had properly been assessed on a pro rata basis for 1989. TSGP appealed the administrative decision to the Circuit Court of Kanawha County. By order dated September 14, 1994, the circuit court affirmed the administrative judge's determination that the AMT provision was constitutional, but reversed the ALJ's decision concerning the pro rata assessment of the AMT tax. Appellant challenges the circuit court's ruling that the AMT provision could not be applied on a pro rata basis for 1989.[7]

We agree with TSGP's contention that this is not a case whose resolution revolves on the issue of prospective versus retroactive application of law. House Bill 2587, which effected the repeal of the pari-mutuel AMT provision, clearly indicated that its date of effect was July 7, 1989. Because the Legislature could easily have provided that the repeal of the AMT provision would relate back to the beginning of 1989 and further because the repealing statute expressly provided for the repeal *not* to take effect for ninety days from the passage of House Bill 2587, we determine that the Legislature expressly evinced an intent to permit the utilization of the AMT provision until July 7, 1989.

Just as Appellant incorrectly analyzed the case in terms of prospective versus retroactive law application, TSGP's focus on whether the AMT provision constituted a daily or an annual tax is also misguided. TSGP argues that the AMT provision constituted an annual tax, as opposed to a daily tax, in an attempt to persuade this Court that the AMT could not be applied in 1989 since it was not in effect at the year's end.[8] However, whether the AMT provision is described in terms of a daily or annual tax is not determinative of the AMT's application in 1989. As the ALJ explained, "the Racing Commission effectively recognized July 6, 1989[,] as the end of the tax year for purposes of the minimum tax." We find no error in the pro rata assessment utilized by the Commission. Such an approach was clearly justified because of statutory amendment.[9] Furthermore, we note that, although the AMT had not been assessed against TSGP on July 6, 1989, the AMT and the attendant liability to pay such tax upon assessment had already accrued prior to reenactment of West Virginia Code § 19–23–9(b)(3) minus the AMT provision.

Having concluded that the AMT tax remained in effect until July 7, 1989, the only question that remains is the proper method

---

6. The Commission approved TSGP's sale of its assets on condition of the escrowing of the disputed amount of AMT tax owed for 1989. No explanation is provided in the record regarding why the escrowed amount exceeds the amount of AMT tax assessed against TSGP for 1989 (the amount escrowed was $530,164.36 and the 1989 AMT assessment was $501,878.74).

7. We do not address the constitutionality of the AMT provision. We note that both the ALJ and the circuit court concluded that the provision was constitutionally valid and we see no basis for ruling otherwise.

8. TSGP cites no authority for its position that "the law as of the time when the tax liability is to be determined is the law to be applied to determine the tax." Because this legal postulate does not address the real issue—whether a tax year can effectively be "shortened" due to statutory repeal—it does not resolve the issue at hand. Moreover, the approach taken by the Commission is not inconsistent with TSGP's position as the time at which the tax liability was determined—July 6, 1989—the AMT provision was still in effect.

9. This conclusion is expressly conditioned on the pro rata application of the 1989 AMT assessment. Obviously, if the Commission had assessed TSGP's AMT in terms of comparing the 1989 wagering amounts to the entire year of wagering amounts for 1986, we would reach a different conclusion.

of assessing the tax against TSGP. The method employed by Appellant was to compare the amount of pari-mutuel wagering tax paid by TSGP during the period of January 1, 1989, to July 6, 1989, to the same period of time in 1986. Pursuant to this approach, TSGP was assessed $501,878.74 for 1989.

TSGP argues that the pro rata assessment of the AMT tax was unwarranted because the Legislature specifically foresaw those instances in which pro rata assessment was permissible and the repeal of the AMT tax was not one of the specified events. Included in the repealed AMT provision was the following language regarding pro rata collection:

> *Provided, further,* That if the number of annual dog racing meetings approved by the racing commission for any dog racing licensee is reduced below four hundred by the racing commission, or as a result of acts of God, including, but not limited to flood, fire, wind damage, work stoppages or other events beyond the control of the licensee, (but not including inclement weather), then any increase in the pari-mutuel wagering tax for any calendar year in excess of the total dollar level paid by such licensee for the calendar year one thousand nine hundred eighty-six, shall be reduced in like proportion.

W.Va.Code § 19–23–9 (repealed 1989).

Appellant convincingly suggests that the inclusion of pro rata language in the AMT provision is logically indicative of legislative intent on the issue of pro rata assessment in the event of repeal. On this issue, the ALJ reasoned:

> Section 19–23–9(b)(3) of the West Virginia Code, prior to repeal of the minimum tax, required that the tax be reduced in proportion to the reduction in the number of racing events below four hundred per year. Using this provision as a guide to legislative intent, and in recognition of the fact that the minimum tax was legally in effect and imposed by law during the first six months of 1989, … [t]he tax imposed prorated the amount of the minimum tax to reflect the portion of the shortened tax year during which the tax was in force, and imposed the tax accordingly.

As the ALJ correctly reasoned, the Legislature expressly contemplated and provided for the use of pro rata accounting in the event of a shortened racing year. Thus, it stands to reason that this same reasoning could properly be extended to the instant situation.

After analyzing this issue, we conclude that the legislative omission of repeal as a specific instance warranting pro rata assessment of the AMT tax does not prevent such assessment. Rather, the express delineation of conditions warranting a pro rata application of the AMT tax supports assessing the AMT on a pro rata basis in 1989 due to the tax's mid-year repeal. Accordingly, we determine that the pari-mutuel alternative minimum tax provision, previously contained in West Virginia Code § 19–23–9(b)(3) (1987) but repealed through House Bill 2587 effective July 7, 1989, was properly utilized by the Commission to assess on a pro rata basis the amount of pari-mutuel wagering taxes owed by the state's dog track licensees for the tax year 1989.

Based on the foregoing, we reverse the decision of the Circuit Court of Kanawha County.

Reversed.

MILLER, Retired J., sitting by Temporary Assignment.

ALBRIGHT, J., did not participate.